IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

THE FLEXIBLE BENEFITS           )
COUNCIL,                        )
                                )
     Plaintiff,                 )
                                )
        v.                      )      1:08cv371 (JCC)
                                )
KENNETH FELTMAN, et al.,        )
                                )
     Defendants.                )

**M E M O R A N D U M   O P I N I O N**

        This matter is before the Court on three separate
motions by Defendants: (1) a Motion to Dismiss Defendant Anthony
W. Hawks for Lack of Personal Jurisdiction; (2) a Motion to
Dismiss for Improper Venue; and (3) a Motion to Dismiss for
Failure to State a Claim.  For the following reasons, the Court
will deny the first motion, deny the second motion, and grant in
part and deny in part the third motion.

**I. Background**

        The facts as alleged in the Complaint are as follows.
Plaintiff The Flexible Benefits Council ("Plaintiff") was
incorporated in 1981 under the laws of the District of Columbia
as a non-profit corporation.  Plaintiff was originally
incorporated under the name "Employers Council on Flexible
Compensation," and did business under that name for 27 years.

1

The organization's purpose has been to promote flexible benefit compensation programs through lobbying and to inform members, national opinion leaders, and the general public about the benefits of such programs.

Between 1985 and July 2007, Defendant Kenneth Feltman ("Feltman") was responsible for Plaintiff's management and operations. Originally, Feltman held the position of Plaintiff's Executive Director as a direct employee of Plaintiff. Then, beginning in 1997, Feltman continued to serve as Plaintiff's Executive Director, as well as in other positions, as an employee and principal of Radnor, Inc. ("Radnor"), an association management company formed by Feltman. Radnor contracted with Plaintiff to provide exclusive day-to-day management until Plaintiff terminated the relationship on July 31, 2007. This management was provided through three separate management service agreements ("MSAs") executed in 1997, 2003, and 2005. The MSAs, in combination with Feltman's status as an officer of Plaintiff, imposed upon him fiduciary, ethical, and other duties toward Plaintiff.

In September 1998, unbeknownst to Plaintiff, its corporate charter was revoked for failure to file an annual report and filing fees with the District of Columbia. The MSAs, as well as its status as an ASAE-certified association management company, placed the responsibility for maintaining Plaintiff's

2

corporate charter on Radnor's shoulders.  In part because neither Radnor nor Feltman ever gave Plaintiff any indication that its charter had been revoked, Plaintiff did not learn of the revocation until March 31, 2008, and until then continued to conduct its business without interruption.  Plaintiff now blames the revocation of its charter on the intentional and/or negligent acts of Feltman and Radnor.

As mentioned above, Plaintiff terminated Radnor's services on July 31, 2007.  On November 13, 2007, pursuant to the 2005 MSA, Plaintiff filed a demand in arbitration against Radnor, accusing Feltman and Radnor of pilfering millions of dollars from Plaintiff.[1]  Radnor responded on March 31, 2008 by filing suit against Plaintiff and its individual board members in the Superior Court of the District of Columbia, arguing that the Court should declare Plaintiff dissolved and place it in receivership.  Defendant Anthony W. Hawks ("Hawks"), an attorney licensed to practice law in the Commonwealth of Pennsylvania and the District of Columbia, represents Radnor in the arbitration and D.C. Superior Court litigation.

In the case at bar, Plaintiff charges that Feltman and Hawks have conspired to steal Plaintiff's identity.  To start, in February 2008 Feltman and Hawks formed and registered a new corporation in the District of Columbia, Defendant Employer's

---

[1] This arbitration is pending and a hearing on the merits is set to begin on July 21, 2008.

Council on Flexible Compensation, Ltd. ("ECFC Ltd."), whose stated purpose is to perform the same type of work as Plaintiff. Then, on March 28, 2008, Feltman reserved the acronym "ECFC" with the D.C. Corporation Division.  The formation of ECFC Ltd. and the reservation of the "ECFC" acronym has precluded Plaintiff from reinstating its corporate charter with its old name and acronym.[2]  In addition, on March 3, 2008, Hawks applied to the U.S. Patent & Trademark Office ("USPTO") to register the mark "Employers Council on Flexible Compensation," and on March 4 applied to register a design mark using the acronym "ecfc."  Both the name and the design have been used by Plaintiff for the past 27 years, and the applications' stated intent for the use of the marks was for services that were identical to those provided by Plaintiff.  ECFC Ltd. has also obtained a domain name, "www.ecfc.com," that is similar to both Plaintiff's trademarks and Plaintiff's domain name, "www.ecfc.org."  Moreover, the website itself is similar to Plaintiff's in both design and in the proclaimed mission statement.  Finally, ECFC Ltd. has obtained offices on the same street as Plaintiff's offices and with the same suite number.

　　　　To remedy these wrongs and reclaim its identity, on April 17, 2008, Plaintiff filed a Complaint against Defendants Feltman, Hawks, and ECFC Ltd. (collectively, "Defendants") that

---

[2] Plaintiff's charter was reinstated in the District of Columbia on April 10, 2008 under its present name, "The Flexible Benefits Council."

4

alleges six counts: (1) Trademark and Service Mark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) Copyright Infringement; (3) violation of the Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (4) breach of fiduciary duty against Feltman alone; (5) common law civil conspiracy; and (6) interference with business and business expectations.  Plaintiff simultaneously filed a Motion for a Temporary Restraining Order ("TRO"), which U.S. District Judge Liam O'Grady denied on April 29, 2008.  On May 2, 2008, Plaintiff filed a Motion for a Preliminary Injunction and a Motion for Expedited Discovery.  This Court ordered discovery to begin immediately, and set the Preliminary Injunction Motion for a hearing on July 8, 2008.  Subsequently, on May 13, 2008, Defendants filed the motions currently before the Court: (1) a Motion to Dismiss Defendant Hawks for Lack of Personal Jurisdiction;[3] (2) a Motion to Dismiss for Improper Venue; and (3) a Motion to Dismiss for Failure to State a Claim.  The Court will address each Motion in turn.[4]

---

[3] Initially, Defendants sought to dismiss both Hawks and ECFC Ltd. for lack of personal jurisdiction, but on June 5, 2008, informed the Court that they would only be challenging jurisdiction over Hawks.

[4] On June 4, 2008, Plaintiff filed a Motion for Leave to File a Supplemental Brief.  The Court will grant this Motion, and consider the evidence contained within it.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks the requisite personal jurisdiction over a defendant.  When a defendant brings a motion pursuant to Fed. R. Civ. P. 12(b)(2), the jurisdictional question is resolved by the judge, and the burden is on the plaintiff to prove that the court may properly exercise jurisdiction over the defendant by a preponderance of the evidence.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 549 (E.D. Va. 2004).  If the existence of jurisdiction turns on disputed questions of fact, the court may resolve the jurisdictional challenge on the basis of a separate evidentiary hearing or at trial.  *Combs*, 886 F.2d at 676.  The court may also decide the jurisdictional question based solely on the motion papers, supporting legal memoranda, and the relevant allegations of the complaint, but if it does so, the plaintiff need only make a "prima facie" showing of jurisdiction, and "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  *Id.*

**B. Analysis**

Defendants argue that the claims against Hawks must be dismissed because Plaintiff has not pled, and cannot prove, that this Court can exercise personal jurisdiction over him.  In response, Plaintiff contends that it has made a "prima facie" showing of personal jurisdiction.

To establish jurisdiction over a non-resident defendant, the Court must first consider whether the exercise of jurisdiction is authorized by Virginia law.  If it is, the Court must then consider whether the exercise of jurisdiction comports with Fourteenth Amendment Due Process standards.  *See Christian Sci. Bd. of Dirs. Of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).  Under the United States Supreme Court's decision in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), to satisfy the requirement of due process a defendant must have sufficient "minimum contacts" with the forum such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Id.* at 316.

A non-resident defendant may be subject to either specific or general jurisdiction.  Specific jurisdiction exists when the plaintiff's claims arise from the defendant's contacts with the forum state, while general jurisdiction depends on a defendant's contacts with the forum state unrelated to the claims

7

at issue.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466
U.S. 408, 414-15 nn.8-9 (1986); *ALS Scan, Inc. v. Digital Serv.
Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002).  To
establish general jurisdiction over a non-resident defendant, the
defendant's activities in the state must be "continuous and
systematic," and the threshold level of minimum contacts is
"significantly higher" than those for specific jurisdiction.
*ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).
Exercise of general personal jurisdiction over a non-resident
typically occurs where the non-resident is "essentially domiciled
within the foreign state."  *Corry v. CFM Majestic, Inc.*, 16 F.
Supp. 2d 660, 663 (E.D. Va. 1998).

    Specific personal jurisdiction may be established over
a non-resident defendant by looking to the state's long-arm
statute.  Under the portion of Virginia's long-arm statute that
is relevant to this case, a Virginia court may exercise personal
jurisdiction "over a person, who acts directly or by an agent, as
to a cause of action arising from the person's . . .
[t]ransacting any business" in Virginia.  Va. Code § 8.01-
328.1(A)(1).  It is important to note that Virginia's long-arm
statute extends personal jurisdiction to the fullest extent
permitted under the Due Process Clause.  *English & Smith v.
Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).  As a result, "the
statutory and constitutional inquiries coalesce" into the
question of whether a defendant had "sufficient minimum contacts

8

with Virginia to satisfy due process." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000).  Nevertheless, it is possible for the contacts of a non-resident defendant to satisfy due process but not fall within the grasp of the Virginia long-arm statute. *See Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 609-10 (E.D. Va. 2002); *DeSantis v. Hafner Creations, Inc.,* 949 F. Supp. 419, 423 (E.D. Va. 1996).

       Plaintiff contends that jurisdiction exists over Hawks, who is also ECFC Ltd.'s President and Chief Operating Officer, based on Hawks's filing of fraudulent trademark applications with the USPTO.  Defendants respond that the "government contacts" principle renders Hawks's filing insufficient to establish jurisdiction.  The "government contacts" principle provides that "petitioning the national government does not 'count' as a jurisdictional contact in the personal jurisdiction analysis." *Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.*, 173 F.3d 829, 831 (Fed. Cir. 1999)(citing *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976)).  The "government contacts" principle was modified by the U.S. Court of Appeals for the District of Columbia, which noted that "credible and specific allegations in the district court that the [defendant] had used [agency] proceedings as an instrumentality of the alleged fraud" might be sufficient to allow a court to exercise personal jurisdiction over the

9

defendant.  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983).  However, courts have found that the *Naartex* exception may only be used "where plaintiffs have not merely alleged fraud but have established a prima facie case of fraud." *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 243 (D. Md. 1992).

Thus, for Plaintiff to establish personal jurisdiction over Hawks based on his filings with the USPTO, it will need to make out a *prima facie* case of fraud.  Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A court should be reluctant to dismiss a complaint under Rule 9(b) if it finds "(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003)(quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).  Here, Hawks swore under penalty of perjury in the trademark applications that "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive . . . ."  Pl.'s

Compl. ¶ 48.  According to Plaintiff, Hawks made that statement knowing that Plaintiff had used the marks in commerce for over two decades, that Feltman had caused the lapse of Plaintiff's corporate charter, and that Radnor had filed suit against Plaintiff seeking its dissolution and placement in receivership. *See id.*  Given these facts, the Court finds that Plaintiff has made out a *prima facie* case of fraud.  As such, the Court finds that Hawks's filings with the USPTO fall within the exception to the "government contacts" principle and constitute a proper basis for jurisdiction as a transaction of business in Virginia.[5]

Defendants attempt to rebut this assertion of jurisdiction by arguing that the acts of a corporate officer or employee taken in his corporate capacity cannot form the predicate for jurisdiction over him in his individual capacity. Defendants are, however, incorrect on the law.  In *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166 (4th Cir. 2002), the Fourth Circuit found that the district court properly exercised personal jurisdiction over an individual defendant who, on behalf of her employer, submitted false information to Virginia companies and to a leading provider of credit information on businesses and corporations with the intention of having Virginia

---

[5] Defendants also argue against jurisdiction on the ground that Hawks filed the trademark applications from his offices in Pennsylvania.  *See* Declaration of Anthony W. Hawks ("Hawks Decl.") ¶ 6.  However, a defendant need not be physically present in Virginia to engage in a transaction of business in the Commonwealth.  *See, e.g., Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

11

businesses rely on that information.  *Id.* at 177.  The Court concluded that the exercise of jurisdiction comported with due process because the defendant "could reasonably have assumed, based on her contacts with the Commonwealth, that she would be sued there."  *Id.*

Having found that Hawks transacted business in Virginia within the scope of Va. Code § 8.01-328.1(A)(1), it is necessary to determine whether maintenance of the suit comports with due process.  The fundamental question is whether Hawks "purposefully availed [him]self of the privilege of conducting activities within the forum state."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 426, 475 (1985).  The Fourth Circuit has found that "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts."  *English & Smith*, 901 F.2d at 38 (internal quotes omitted)(alteration in original).  Here, Hawks's allegedly fraudulent filings with the USPTO, which constitute two separate transactions of business in Virginia, give rise to the cause of action against him.  Thus, the Court finds that Plaintiff has made a *prima facie* showing that Hawks purposefully established sufficient contacts with the Commonwealth to satisfy the requirements of due process.  Consequently, the Court will deny the Motion to Dismiss for Lack of Personal Jurisdiction.

### III. Motion to Dismiss for Improper Venue

#### A. Standard of Review

Venue is established in a federal district court under 28 U.S.C. § 1391.  A defendant may move to dismiss a case for improper venue under Fed. R. Civ. P. 12(b)(3).  When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper.  *See Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *overruled on other grounds by Ratino v. Med. Serv. of D.C.*, 718 F.2d 1260 (4th Cir. 1983).  For a plaintiff to show proper venue where no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of venue.  *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  If venue does not properly lie in the district in which the case was filed, the court may dismiss the case or, if it would be in the interest of justice, transfer it to a district where it could have been brought.  28 U.S.C. § 1406(a).

#### B. Analysis

In a civil action such as this one where jurisdiction is not founded solely on diversity of citizenship, the case may be brought in a judicial district: (1) where any defendant resides, if all defendants reside in the same state; (2) where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is located; or (3) where any defendant may

13

be found, if there is no other district in which the action may otherwise be brought.  28 U.S.C. § 1391(b).  Defendants contend that venue in Virginia is improper under all three alternatives.

The Court concurs that venue in Virginia is improper under the first prong of § 1391(b), as Defendants reside in different states.  Regarding the second prong, the Court notes that "in determining whether events or omissions are sufficiently substantial to support venue . . ., it should not focus only on those matters that are in dispute or that directly led to the filing of the action."  *Id.*  Instead, the Court "should review 'the entire sequence of events underlying the claim.'"  *Id.* (citations omitted).  Plaintiff contends that there are sufficient facts in the record to make a *prima facie* showing that a substantial part of the events giving rise to this action occurred in Virginia.

The Court finds that, considering all the evidence before it, venue is proper in Virginia, as many of the events giving rise to Plaintiff's claims occurred here.  For example, Feltman conducted much of ECFC Ltd.'s business from his home in Falls Church, Virginia, including the incorporation of ECFC Ltd., the acquisition of the www.ecfc.com domain name, and the development of the content of the company's website.  *See* Declaration of Kenneth Feltman ("Feltman Decl.") ¶¶ 7, 10-12; Deposition of Kenneth Feltman ("Feltman Dep.") at 72-78.  In fact, Feltman admitted that about two-thirds of the work he has

14

performed for ECFC Ltd. has been done at home.  Feltman Dep. at 108-09.  Moreover, telephone bills for the phone number used by ECFC Ltd. are sent to Feltman's home in Falls Church, and the www.ecfc.com domain name used by ECFC Ltd. for its website is registered in Feltman's name at his Falls Church address.  *See* Exs. D & E to Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss for Lack of Jurisdiction and Improper Venue.  Even the lease of the domain name to ECFC Ltd. occurred through Feltman in Virginia. *See* Feltman Dep. at 63-71.  Finally, Hawks filed the fraudulent trademark applications with the USPTO in Virginia.  While venue may also be proper in another district, it is certainly proper here in Virginia.  The Court will therefore deny Defendants' Motion to Dismiss for Improper Venue.

### IV.  Motion to Dismiss for Failure to State a Claim

#### A. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991)(citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v.*

*McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).
Moreover, "the complaint is to be liberally construed in favor of
plaintiff." *Id.* In addition, a motion to dismiss must be
assessed in light of Rule 8's liberal pleading standards, which
require only "a short and plain statement of the claim showing
that the pleader is entitled to relief." Fed. R. Civ. P. 8.
However, while Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __
U.S. __, 127 S. Ct. 1955, 1964-65 (2007)(citation omitted).

### B. Analysis

Defendants move to dismiss the following claims: (1)
Counts I, II, III and VI against Feltman and Hawks individually;
(2) Count II; (3) Count IV; and (4) Count V. Plaintiff concedes
that it has not sufficiently pled Count II, copyright
infringement, and asks for it to be dismissed without prejudice,
which the Court will do. The Court now turns to the remaining
counts that Defendants seek to dismiss.[6]

---

[6] At the June 6, 2008 hearing on these Motions, Plaintiff argued that
Virginia law governs its state law claims, while Defendants argued that
District of Columbia law governs. Neither party thoroughly addressed the
choice of law question in their briefs. However, the Court need not resolve
this dispute at this time, as the result of Defendants' 12(b)(6) Motion to
Dismiss is the same under either Virginia or District of Columbia law.

1) Counts I, III, and VI against Feltman and Hawks

Defendants argue for the dismissal of Counts I, III, and VI against Feltman and Hawks individually on the ground that they acted within the scope of their duties as officers of ECFC Ltd. and not as individuals.  Specifically, Defendants construe Plaintiff's attempt to hold Feltman and Hawks individually liable as an improper attempt to pierce the corporate veil.

"It is well-established that, in general, an individual corporate officer or director is not subject to personal liability simply by virtue of his office." *Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1065 (E.D. Va. 2002).  Instead, liability will attach "only if the corporate veil can be pierced which appropriately occurs only in certain extraordinary circumstances." *Id.*  However, a corporate director, officer or employee may also be held personally liable if that person "actively participates in the commission of illegal conduct." *Brown Mfg. Corp. v. Alpha Lawn & Garden Equipment, Inc.*, 219 F. Supp. 2d 705, 708 (E.D. Va. 2002). In addition, "it is equally well-established that an individual corporate officer or director can be held personally liable for trademark infringement." *Stafford Urgent Care*, 224 F. Supp. 2d at 1065-66 (citing *Polo Fashions v. Craftex*, 816 F.2d 145, 149 (4th Cir. 1987)).  This is particularly the case where an officer of the corporation "authorized and approved" the acts of

17

trademark infringement.  *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir. 1978).

Defendants' alleged scheme to steal Plaintiff's identity is outlined in paragraphs 37-50 of the Complaint. Feltman's personal involvement is detailed in paragraphs 37, 41 and 50, and Hawks's involvement is detailed in paragraphs 42, 43, 47, 48, and 49.  *See* Pl.'s Compl. ¶¶ 37-50.  These factual allegations give rise to Plaintiff's claims in Counts I, III, and VI for trademark infringement, cybersquatting, and tortious interference with business, respectively.  They also demonstrate that Feltman and Hawks personally and actively participated in the commission of these illegal acts.  Hence, the exception to the general rule that corporate officers cannot be held personally liable simply by virtue of their office applies in this case.  The Court therefore finds that Plaintiff has sufficiently stated claims in Counts I, III, and VI against Feltman and Hawks individually.

### 2) Count IV

Defendants contend that Count IV, breach of fiduciary duty against Feltman alone, should be dismissed because it is barred by the 2005 MSA as well as by the statute of limitations. Paragraph 31 of the 2005 MSA[7] states that "under no circumstances

---

[7] The 2005 MSA was presented to this Court as Exhibit 5 to Plaintiff's Motion for a Temporary Restraining Order.  Although generally in deciding a Rule 12(b)(6) Motion to Dismiss a court may not consider any documents outside of the complaint, it may nonetheless consider "official public records, documents central to plaintiff's claim, and documents sufficiently referred to

shall either party seek to hold liable the officers, directors, members, servants or agents of the other party in their personal and individual capacities on any claim or theory whatever arising under the performance, non-performance, breach, cancellation or termination of this agreement." *See* Ex. 5 to Pl.'s Mot. for a TRO. Defendants argue that any fiduciary duty that Feltman owed Plaintiff was governed by the terms of the 2005 MSA, which, under Defendants' reading, precludes any lawsuit against Feltman for breach of that duty.

Plaintiff responds that this exculpatory clause in the 2005 MSA is unenforceable. The District of Columbia Court of Appeals has found that courts have "not generally enforced exculpatory clauses to the extent that they limit[] a party's liability for gross negligence, recklessness or intentional torts." *Moore v. Waller*, 930 A.2d 176, 179 (D.C. 2007)(quoting *Carleton v. Winter*, 901 A.2d 174, 181 (D.C. 2006)). Therefore, to the extent that the 2005 MSA attempts to limit Feltman's liability for intentional conduct, the Court finds that it is unenforceable. Because the allegations in the Complaint relating to Feltman's attempt to steal Plaintiff's identity describe conduct that is unquestionably intentional, the Court finds that

---

in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Federal Ins. Co.*, 164 F. Appx. 395, 396 (4th Cir. 2006). Here, the Complaint makes numerous, explicit references to the 2005 MSA, and its authenticity is not disputed. *See* Pl.'s Compl. ¶¶ 12-14, 17-18, 31-32, 35. Thus, the Court will consider the document in deciding this Motion.

Feltman's conduct falls outside the reach of the 2005 MSA's exculpatory clause.

Defendants further argue that, even if the exculpatory clause does not prohibit Count IV, a claim against Feltman for breach of fiduciary duty is time-barred.  Defendants point to Feltman's alleged failure to file an annual report on Plaintiff's behalf back in 1998 as the act or omission on which any claim for breach of fiduciary duty must be based.  Running the statute of limitations clock from 1998, Defendants argue that under either Virginia or District of Columbia law the claim is time-barred.

Plaintiff disputes Defendants' assertion of what conduct gives rise to its breach of fiduciary duty claim. Instead of relying on Feltman's decade-old conduct surrounding the revocation of Plaintiff's charter, Plaintiff bases its claim on conduct that has occurred within the past six months: the misuse of Plaintiff's confidential information in order to steal its identity.  An employee has "a duty not to reveal confidential information obtained through his employment, and not to use such confidential information after he has left his employment." *Bull v. Logetronics, Inc.*, 323 F. Supp. 115, 133 (E.D. Va. 1971).  By using this information, a former employee is "appropriating, in effect, to his competitive advantage what rightfully belongs to his employer." *Id.* (quoting *Community Counselling Service v. Reilly*, 317 F.2d 239, 244 (4th Cir. 1963)).  Here, Plaintiff alleges that Feltman, with knowledge that Plaintiff's charter had

lapsed, breached his fiduciary duty to Plaintiff by using its confidential information to incorporate ECFC Ltd., reserve the name "ECFC" with the D.C. Corporations Division, reserve and use the domain name www.ecfc.com, and register Plaintiff's trademarks.  Pl.'s Compl. ¶¶ 28-30, 82-83.  These allegations all fall within both the District of Columbia's and Virginia's statute of limitations for breach of fiduciary duty claims.  *See* D.C. Code. Ann. § 12-301(8)(2001); Va. Code. Ann. § 8.01-248.  As a result, the Court finds that Plaintiff has sufficiently stated a claim in Count IV.

      3) Count V

      Finally, Defendants argue that Plaintiff has failed to sufficiently plead a claim for common law conspiracy.  To make a *prima facie* showing of civil conspiracy, a Plaintiff must show: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; [and] (4) [that the] overt act was done pursuant to and in furtherance of the common scheme." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).[8]  Applied here, Plaintiff alleges the agreement and object of the conspiracy – to steal Plaintiff's identity – in paragraph 37 of the Complaint.  In paragraphs 38 through 50,

---

    [8] The elements for civil conspiracy are the same under Virginia law. *See Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985).

Plaintiff details the unlawful overt acts committed by Defendants in furtherance of the conspiracy.  Finally, paragraph 90 highlights, albeit briefly, the damages suffered by Plaintiff as a result of the conspiracy.  *See* Pl.'s Compl. ¶¶ 37-50, 90.

The more difficult hurdle Plaintiff faces is the intra-corporate immunity doctrine.  This doctrine provides that, because it takes two to form a conspiracy, and a corporation can act only through its agents, officers, and employees, a "'conspiracy' between a corporation and agents of the corporation acting within the scope of their employment is a legal impossibility."  *Griffin v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1979).  This doctrine has an exception: if an employee, officer, or agent has an "independent personal stake" in the conspiracy, a conspiracy with the corporation may be found.  *Detrick v. Panaplina*, 108 F.3d 529, 544 (4th Cir. 1997); *see also Weaver v. Gross*, 605 F. Supp. 210, 215 (D.D.C. 1985)(finding that the exception applies where the defendant's actions "were taken solely for personal, nonbusiness motivations").  Plaintiff alleges that "[e]ach of the Defendants has benefitted, either directly or indirectly, as a result of the conspiracy."  Pl.'s Compl. ¶ 89.  While this statement does not provide much in the way of details, it is evident by reading the Complaint as a whole that Feltman and Hawks, as the only officers and employees of ECFC Ltd., stood to benefit greatly in their personal capacities from the conspiracy to steal Plaintiff's identity.  Moreover,

Plaintiff's civil conspiracy claim also survives because the acts incorporating ECFC Ltd., and the agreement to establish the conspiracy, were made prior to the company's incorporation.  The Court therefore finds that Plaintiff has pled sufficient facts to state a claim for civil conspiracy under either District of Columbia or Virginia law.

### V. Conclusion

For these reasons, the Court will deny Defendants' Motion to Dismiss Defendant Hawks for Lack of Personal Jurisdiction, deny Defendants' Motion to Dismiss for Improper Venue, and grant in part and deny in part Defendants' Motion to Dismiss for Failure to State a Claim.

An appropriate Order will issue.


June 16, 2008                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE