IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| THE FLEXIBLE BENEFITS COUNCIL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08cv371 (JCC) |
| | ) | |
| KENNETH FELDMAN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants Kenneth Feltman and Anthony Hawks's Objection to Magistrate Judge's Order to Compel Defendants to disclose communications that Defendants claim are protected by the attorney-client privilege.  For the following reasons, the Court will **deny** the objection.

### I. Background

The facts alleged in Defendants' Objection are as follows.  Plaintiff The Flexible Benefits Council ("Plaintiff") was incorporated in 1981 as a non-profit corporation in the District of Columbia.  Plaintiff was originally incorporated under the name "Employers Council on Flexible Compensation," and did business under that name for 27 years.  Its purpose is promoting flexible benefit compensation programs through lobbying

1

and informing members, national opinion leaders, and the general public about the benefits of such programs.

Between 1985 and July 2007, Defendant Kenneth Feltman ("Feltman") was responsible for Plaintiff's management and operations. Originally, Feltman held the position of Plaintiff's Executive Director as a direct employee of Plaintiff. Beginning in 1997, Feltman served as Plaintiff's Executive Director, and in other positions, as an employee and principal of Radnor, Inc. ("Radnor"), an association management company formed by Feltman. Radnor contracted with Plaintiff to provide exclusive day-to-day management through three separate management service agreements ("MSAs") executed in 1997, 2003, and 2005.

In September 1998, Plaintiff's corporate charter was revoked for failure to file an annual report and filing fees with the District of Columbia. The MSAs, as well as Plaintiff's status as a ASAE-certified association management company, placed the responsibility for maintaining the corporate charter on Radnor. Plaintiff did not learn of the revocation until March 31, 2008, and continued to conduct its business without interruption.

Plaintiff terminated Radnor and Feldman on July 31, 2007. Pursuant to the 2005 MSA, Plaintiff filed a demand in arbitration against Radnor, accusing Feltman and Radnor of

embezzling millions of dollars.[1]  Radnor responded on March 31, 2008 by filing suit against Plaintiff and its individual board members in the Superior Court of the District of Columbia, arguing that the Court should declare Plaintiff dissolved and place it in receivership.[2]  Defendant Anthony W. Hawks ("Hawks"), an attorney licensed to practice law in the Commonwealth of Pennsylvania and the District of Columbia, represents Radnor in the arbitration and D.C. Superior Court litigation.

In February 2008 Feltman and Hawks formed and registered a new corporation in the District of Columbia, Defendant Employer's Council on Flexible Compensation, Ltd. ("ECFC Ltd."), whose stated purpose is to perform the same type of work as Plaintiff.  On March 28, 2008, Feltman reserved the acronym "ECFC" with the D.C. Corporation Division.  These acts have precluded Plaintiff from reinstating its corporate charter with its old name and acronym.[3]  In addition, on March 3, 2008, Hawks applied to the U.S. Patent & Trademark Office to register the mark "Employers Council on Flexible Compensation," and on March 4 applied to register a design mark using the acronym "ecfc."  Both the name and the design have been used by Plaintiff for the past 27 years, and the applications' stated intent for

---

[1] A hearing on the merits in this arbitration began on July 21, 2008.

[2] This action has been stayed pending the outcome of the case at bar.

[3] Plaintiff's charter was reinstated in the District of Columbia on April 10, 2008 under its present name, "The Flexible Benefits Council."

the use of the marks was for services that were identical to those provided by Plaintiff. ECFC Ltd. has also obtained a domain name, "www.ecfc.com," that is similar to both Plaintiff's trademarks and Plaintiff's domain name, "www.ecfc.org." Moreover, the website itself is similar to Plaintiff's in both design and in the proclaimed mission statement. Finally, ECFC Ltd. has obtained offices on the same street as Plaintiff's offices and with the same suite number.

On April 17, 2008, Plaintiff filed a Complaint against Defendants Feltman, Hawks, and ECFC Ltd. (collectively, "Defendants"), alleging: (1) Trademark and Service Mark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) Copyright Infringement; (3) violation of the Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (4) breach of fiduciary duty against Feltman alone; (5) common law civil conspiracy; and (6) interference with business and business expectations.

Plaintiff simultaneously filed a Motion for a Temporary Restraining Order, which U.S. District Judge Liam O'Grady denied on April 29, 2008. On May 2, 2008, Plaintiff filed a Motion for a Preliminary Injunction and a Motion for Expedited Discovery. This Court ordered discovery to begin immediately, and set the Preliminary Injunction Motion for a hearing on July 8, 2008. Subsequently, on May 13, 2008, Defendants filed a Motion to

Dismiss Defendants Hawks and ECFC Ltd. for Lack of Personal Jurisdiction, a Motion to Dismiss for Improper Venue, and a Motion to Dismiss for Failure to State a Claim. The Court denied these motions on June 16, 2008.

In early June Defendants filed a privilege log with five items. On June 24, 2008, Defendants filed a revised privilege log ("Log") with 240 items. After discussions between counsel, Defendants permitted Plaintiff's counsel to review all of the documents listed on the Log and to take notes regarding the review. Plaintiff did so on July 18, 2008 and agreed that 132 of the items on the Log were privileged. These items included pleadings and documents related to the Arbitration. Plaintiff's counsel believed that the remaining 108 items were not covered by the privilege. After an exchange of letters, Defendant voluntarily produced 42 of the remaining 108 items on August 15, 2008.

On the same day, Plaintiff filed a Motion to Compel the production of all of the final 66 items from Defendants' Log and for attorney's fees and costs incurred in filing that motion. Plaintiff believed that Defendants were stalling and non-responsive to its requests for production of all non-privileged documents. Defendants filed a Memorandum in Opposition to the Motion on August 20, 2008. Magistrate Judge Jones heard the Motion on August 22, 2008 and issued an order allowing the Motion

to Compel on August 28, 2008 (Order).  Defendants filed an Objection to the Magistrate Judge's Order on September 12, 2008.  Plaintiff filed a Memorandum in Opposition on September 16, 2008.  This matter is currently before the Court.

## II. Standard of Review

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters such as discovery orders.  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see Federal Election Comm'n v. The Christian Coalition*, 178 F.R.D. 456, 459-60 (E.D. Va. 1998) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)).  As a non-dispositive matter, the review of a magistrate's discovery order is properly governed by the "clearly erroneous or contrary to law" standard of review.  *See Jesselson v. Outlet Assocs. of Williamsburg, Ltd.,* 784 F. Supp. 1223, 1228 (E.D. Va. 1991).

Only if a magistrate judge's decision is "clearly erroneous or contrary to law" may a district court judge modify or set aside any portion of the decision.[4]  Fed. R. Civ. P.

---

[4] Wright & Miller explain that "discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis."  12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3069 (2d ed. 1997); *see, e.g.*, *Doe v. Marsh*, 899 F. Supp. 933, 934 (N.D.N.Y. 1995) ("Pursuant to this highly deferential standard of review, magistrate judges are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if the discretion is abused.") (citations omitted); *cf. Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986) (explaining that district court's discovery rulings will not be overturned absent clear showing of abuse of discretion) (citations omitted).

72(a); *see* 28 U.S.C. § 636(b)(1)(A).  A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985).  The leading treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as "extremely difficult to justify."  12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069 (2d ed. 1997).  The same treatise admits that "although an abuse-of-discretion attitude should apply to many discovery and related matters, it need not curtail the power of the district judge to make needed modifications in the magistrate judge's directives."  *Id.*

### III. Analysis

In bringing its Motion to Compel, Plaintiff argued five different bases on which the Magistrate Judge could compel the production of the 240 documents listed on Defendants' Second Privilege Log (Log).  Plaintiff argued that: (1)the Log was untimely, (2) the claimed privileges were waived because they were not properly stated in the Log, (3) the documents were not covered by the attorney-client privilege, (4) Defendant Feltman

waived the attorney-client privilege because he relies on the defense of "advice of counsel," and (5) the crime-fraud-tort exception applies.

The Magistrate Judge did not rule on timeliness, waiver by insufficient statement, or Defendant's "advice of counsel" defense, but granted the motion on both remaining grounds: that the documents were not covered by the attorney-client privilege and that the crime-fraud-tort exception applied to any privilege that might exist.  The Magistrate Judge declined to examine the documents themselves *in camera* because he was "completely satisfied" that Plaintiff's arguments were meritorious.  The Magistrate Judge also awarded the Plaintiff the attorney's fees and costs it incurred in bringing the Motion to Compel.

Defendants object to both of the Magistrate Judge's rulings.  The Court will examine each objection in turn.

   A.   <u>Whether the Compelled Documents are Protected by the Attorney Client Privilege</u>

        1.   <u>Attorney-Client Privilege</u>

The Magistrate Judge found that "[w]hether or not there was an attorney/client relationship between these two men [Feltman and Hawks], they were communicating on this subject as business associates . . . the communications in issue, including some that might otherwise be privileged, are not privileged because of the business relationship."  Ex. 1 to Defs.' Objection at 25 (Hearing Transcript).

The attorney-client privilege exists when (1) an attorney-client relationship is established, (2) the communication relates to a fact that the attorney learned from his client, outside the presence of strangers, for the purpose of securing a legal opinion or legal services, and (3) the privilege has been claimed and not waived.  *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).  The burden of establishing the privilege is on its proponent.  *Id.*  In the Fourth Circuit, this privilege is disfavored and is "strictly confined within the narrowest possible limits."  *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984).

Defendants argue that the communications between Hawks, an attorney, and Feltman, his client, are privileged.  The attorney-client relationship has been established because Hawks acted as Feltman's counsel in the arbitration action between the parties (Arbitration) and serves as trial counsel in a civil action between the parties in the Superior Court of the District of Columbia (D.C. Litigation).  Defs.' Objection at 4.  Defendants also assert that the 240 documents listed in the Log, minus the 42 that they voluntarily produced to Plaintiff on August 15, 2008, pertain to those representations.  *Id.*  Defendants submit that they produced documents regarding communications between Hawks and Feltman relating to ECFC Ltd's formation and the filing of trademark applications on August 15,

9

2008. *Id.* at 5. Defendants believe that, in pursuing production of the remaining 66 documents on the Log, Plaintiff is merely seeking "privileged communications that were made in the context of other litigation involving the parties so that it can gain insight into the Defendants' litigation strategy and tactics." *Id.*

Plaintiff argues that the 66 remaining documents are not privileged for two reasons. First, they were created at least six months after the facts relevant to the Arbitration were complete (late July 2007, when Plaintiff terminated Feltman and his company). Pl.'s Mem. in Opp'n at 11. Second, they show Hawks and Feltman working as business associates, not as attorney and client, and "have no conceivable relevance" to the Arbitration or the D.C. Litigation. *Id.* at 12, 15. The documents show Hawks and Feltman planning out the business aspects of Defendant ECFC Ltd: acquiring a domain name, selecting a logo, creating a website, reserving trade names, and filing trademark applications. *Id.* at 12-13. Plaintiff notes that Defendants have admitted that Feltman asked Hawks to become his business partner in ECFC, Ltd. *Id.* at 12.

Upon review of the documents at issue *in camera*, the Court finds that, while an attorney-client relationship may exist between Hawks and Feldman, the documents Plaintiff seeks do not relate to this representation, but rather to the acts Hawks and

10

Feldman undertook in their roles as business partners in the formation of ECFC Ltd. Given the narrow limits of the attorney-client privilege in this Circuit, that privilege does not apply here. Defendants' Objection will be denied.

### 2. The Crime-Fraud Exception

The Magistrate Judge found that, "in the alternative . . . plaintiff has far exceeded the necessary showing . . . that many of these communications occurred in an effort to commit a tort, more than one tort, including fraud." Ex. 1 to Defs.' Objection at 25 (Hearing Transcript).

The crime-fraud exception excludes communications from the attorney-client privilege where a client "sought the advice of counsel" to commit or further a crime or fraud, and the privileged materials are closely related to the client's existing or future criminal or fraudulent scheme. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999). In the Fourth Circuit, this exception also applies to tortious conduct. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). The party asserting the exception bears the burden of making a *prima facie* showing that the privileged communications fall within the exception. *Chaudhry*, 174 F.3d at 403-04.

Defendants argue that the crime-fraud exception does not apply because Plaintiff has not alleged a crime or fraud, and the purported existence of tortious conduct "begs the ultimate

11

question in this lawsuit." Defs.' Objection at 5. In addition, Defendants submit that Plaintiff has not made out a *prima facie* case for fraud based on Defendants' trademark applications because Defendants signed the Entitlement Declaration[5] with a good faith belief that Plaintiff's *right* to use the mark expired when its corporate charter was revoked in 1998. Defs.' Objection at 12.

    Plaintiff argues that the crime-fraud exception applies here and it has made a *prima facie* showing that Defendants engaged in tortious and fraudulent acts in furtherance of their scheme to steal Plaintiff's corporate identity. Pl.'s Mem. in Opp'n at 18. These acts include incorporating ECFC, Ltd, reserving ECFC and similar trade names, acquiring a confusingly similar domain name and website, filing misleading trademark applications for Plaintiff's name and logo, and actively concealing all of these actions. *Id.* Plaintiff submits that it has also made out a *prima facie* case for violations of the Lanham Act (for mark infringement and cybersquatting), breaches of Feltman's fiduciary duties to Plaintiff, and conspiracy to injure Plaintiff in its contracts and business. *Id.* Plaintiff also argues that Defendants' declarations in the trademark

---

[5] "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce"

applications[6] were fraudulent under *Medinol Ltd. v. Neuro Vast, Inc.*, 64 USPQ 2d 1205 (TTAQ 2003).  *Id.* at 20.  *Medinol* held that a "trademark applicant commits fraud . . . when it makes a material misrepresentation of fact in its declaration which it knows or should know to be false or misleading."  *Id.* at 1209.

　　　　Defendants incorrectly believe that the crime-fraud exception requires the court to decide the ultimate issue.  *In re Grand Jury Proceedings*, 401 F.3d 247, 251 (4th Cir. 2005) ("In satisfying this *prima facie* standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required.").  Rather, the Fourth Circuit requires "enough evidence to support a verdict in favor of the party making the claim."  *See Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220 (4th Cir. 1976).  In light of this standard, the Court finds that Plaintiff has met its burden of proof and shown that the documents it seeks to compel involve communications between Feltman and Hawks intended to further a present scheme of fraudulent or tortious acts.  The Court agrees with the Magistrate Judge's alternative finding that, if any attorney-client privilege does exist, it is excluded from that privilege by the crime fraud exception.

---

[6] Defendants made both the Entitlement Declaration and the Use Declaration.  The Use Declaration states that "Applicant is the owner of the mark sought to be registered and is using the mark in commerce . . . ."  Pl.'s Mem. in Opp'n at 26.

B.  <u>Whether the Magistrate Judge Correctly Awarded Attorney's Fees to Plaintiff</u>

The Magistrate Judge found that "counsel fees should be awarded.  This situation is well within the standard for that." Ex. 1 to Defs.' Objection at 27 (Hearing Transcript).

Defendants argue that Plaintiff is not entitled to attorney's fees because this situation falls into two of the three categories where attorney's fees "must not" be awarded under Federal Rule of Civil Procedure 37(a)(5)(A)(ii)-(iii). Namely, where "(ii) the opposing party's non-disclosure, response or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Defendants argue that their decision not to produce these documents was "substantially justified" because, of the original 240 items on the Log, Plaintiff reviewed each of them and agreed that 132 were, in fact, privileged.  Defendants do not identify what "other circumstances" make the Magistrate Judge's award unjust.

Plaintiff submits that attorney's fees were correctly awarded because Defendants' Log was untimely, requiring Plaintiff to take Defendants' depositions without the Log.  The Log was also insufficient, requiring Plaintiff to spend time and money to review the "privileged" documents at Defendants' location. Plaintiff also argues that the documents were not actually privileged at all, yet Plaintiff had to submit several written

14

requests for additional production and was finally forced to draft its Motion to Compel and Memorandum in Support. Pl.'s Mem. in Opp'n at 29.

The Court finds that neither Rule 37(a)(5)(A)(ii) or (iii) apply here because the documents for which Defendants claimed attorney-client privilege are not actually covered by that privilege. There was also no "substantial justification" for Defendants' actions because, although over 50 percent of the items originally included in the Log are covered by the attorney-client privilege, Plaintiff mis-classified a large number of documents as privileged. In addition, the Court reviews the decisions of the Magistrate Judge only for clear error; only if the Magistrate Judge's decisions are "clearly erroneous or contrary to law" may a district court judge modify or set aside any portion of the decision. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

### IV. Conclusion

For these reasons, the Court will **deny** Defendant's Objection to Magistrate's Order to Compel.

An appropriate Order will issue.

October 8, 2008 _____/s/_____
Alexandria, Virginia James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE