IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
EMPLOYERS COUNCIL ON          )
FLEXIBLE COMPENSATION,        )
                              )
      Plaintiff,              )
                              )
                              )
          v.                  )      1:08cv371 (JCC)
                              )
                              )
KENNETH FELTMAN et al.,       )
                              )
      Defendants.             )
                              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion for Reconsideration or, alternatively, to Amend or Alter Judgment.  For the following reasons, the Court will deny Defendants' motion.

## I. Background

The relevant facts are as follows.  On April 17, 2008, the Employers Council on Flexible Compensation ("Plaintiff") filed a complaint ("Complaint") in this Court against Defendants Feltman, Hawks, and ECFC Ltd. (collectively, "Defendants") alleging six counts: (1) trademark and service mark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) copyright infringement; (3) violation of the Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

1

(4) breach of fiduciary duty (against Defendant Feltman only); (5) common law civil conspiracy; and (6) interference with business and business expectations.

On June 16, 2008, the Court dismissed Count II without prejudice, on Plaintiff's request.  It also, on Plaintiff's motion and with out objection by Defendants, dismissed Counts IV-VI of the Complaint without prejudice on November 12, 2008.  On June 18, 2008, the parties entered into a preliminary injunction. In this injunction, Defendants agreed to withdraw any objections to the Court's personal jurisdiction over them and not to use Plaintiff's marks pending the outcome of the case.

On September 11, 2008, Plaintiff filed a Motion for Summary Judgment on Counts I and III.  Defendants opposed the motion and the Court heard oral arguments on October 15, 2008. The parties abbreviated their arguments, however, and represented to the Court that they had resolved most of the issues between them by consent.  The parties and the Court agreed that a hearing only on the issues of damages would occur on October 17, 2008. On that date, the parties returned to Court and represented that they had agreed upon a permanent injunction.  The Court entered this injunction on October 22, 2008 ("Consent Order").

In the Consent Order, Defendants agreed "not to contest further the distinctiveness of Plaintiff's marks" or "Plaintiffs [sic] ownership of or rights in" those marks, and agreed "that

2

Plaintiff's marks are subject to the protections of the Lanham Act." (Consent Order 1-2.)  The Consent Order also permanently enjoined Defendants from using, in any manner, Plaintiff's marks and any other marks or names affiliated with Plaintiff, or anything similar thereto.  Defendants also agreed to provide a list of all trade, business, and domain names registered by Defendants and their agents since January 1, 2008 and to transfer the domain name "ecfc.com" to Plaintiff.

The Court scheduled an evidentiary hearing on the issues of damages for November 5, 2008.  The Court also set a schedule for the parties to submit supplemental briefing on damages.  In accordance with this schedule, Plaintiff submitted a supplemental memorandum in support of its requests for statutory damages and attorney's fees on October 16, 2008.  Defendants filed their own supplemental brief opposing these requests with a sworn declaration by Defendant Hawks.  Plaintiff responded with a second supplemental memorandum rebutting Hawks's affidavit on October 30, 2008.  The parties submitted proposed findings of fact on November 4, 2008.  The Court held an evidentiary hearing on the remaining issues of statutory damages and attorney's fees on November 5 and 6, 2008.

The Court issued a memorandum opinion and order disposing of those issues on May 14, 2009 and granting Plaintiff's requests for statutory damages, in the amount of

3

$20,000, and for attorney's fees, in an amount to be determined. On May 29, 2009, Defendant filed a Motion for Reconsideration or, alternatively, to Amend or Correct the Judgment.  Plaintiff opposed the motion on June 12, 2009.  This matter is currently before the Court.

## II. Standard of Review

Under Federal Rule of Civil Procedure, 59(e), a party may file a motion to alter or amend a judgment within ten days of the entry of judgment.  A district court has "considerable discretion in deciding whether to modify or amend a judgment." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008).  It is, however, "a remedy to 'be used sparingly.'"  *Id. (quoting Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).  A motion to alter or amend a judgment under Rule 59(e) is appropriate on three different grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Pacific Ins. Co.*, 148 F.3d at 403.

## III. Analysis

Defendants seek reconsideration of the Court's May 14, 2009 Memorandum Opinion and Order (Judgment) on three grounds. First, they argue that the Order "is based on the erroneous premise that the Defendants admitted liability for trademark

4

infringement and cybersquatting in the [Consent Order]."  Defs.'
Mot. for Recons. 1.  Second, Defendants request that the Court
explicitly rule on the merits of Plaintiff's trademark
infringement and cybersquatting claims, which it did not address
because of its erroneous conclusion that Defendants had admitted
liability for these acts.  Third, Defendants request that the
Court "correct" two of its specific factual findings that are
unsupported by the record, regardless of whether those facts were
determinative.  The Court will address each of Defendants'
requests in turn.

> A.   <u>Defendants' Admission of Liability for Trademark
>      Infringement and Cybersquatting</u>

In ruling on the issues of damages, the Court
recognized, "[a]t the outset . . . that Defendants [] admitted
liability for trademark infringement . . . and cybersquatting
. . . in the [Consent] Order."  Mem. Op. of May 14, 2009
[hereinafter, Mem. Op.] 6.  The Court then evaluated and decided
only the questions of whether, given those admissions, Plaintiff
merited an award of statutory damages and attorney's fees.  Mem.
Op. 6.  Defendants object to the Court's ruling, arguing that
they did not admit liability for trademark infringement and
cybersquatting or, that they did not intend to do so at the time.
Defs.' Mot. for Recons. 4-5.

First, Defendants submit that the pleadings filed by
the parties after the Court entered the Consent Order and

scheduled an evidentiary hearing on damages, indicate that the issues of liability remained disputed. They point to Plaintiff's proposed findings of fact and conclusions of law, which do not "highlight" Defendants' admissions of liability. Defs.' Mot. for Recons. 4. What Plaintiff's pleadings do or do not "highlight," however is not determinative, or binding on this Court. Parties commonly continue to argue issues that a court may find are conceded. Plaintiff's subsequent pleadings do not determine whether or not Defendants' Consent Order admitted liability.

Defendants also rely on the ambiguous language of the Consent Order to support their argument. They submit that, "[g]iven the seriousness and significance of this issue, any admission of liability must be explicit." Def.'s Mot. for Recons. 4. Defendant cites no authority for this proposition. In addition, simultaneously with this motion, Defendants move the Court to amend and clarify the Consent Order to plainly state that Defendants did not admit liability for trademark infringement or cybersquatting. The Court is unconvinced by their argument. If Defendants intended to reserve their rights and not concede liability, they should have negotiated for and included such a phrase in the Consent Order before signing it and submitting it to the Court.

The Court signed and entered the Consent Order, which had also been signed by both parties, on October 22, 2008. One

week earlier, on October 15, 2008, the Court had held a scheduled hearing regarding Plaintiff's Motion for Summary Judgment and Motion to Declare its Exhibit and Witness Lists as Timely.  The parties noted their appearances and approached the bench for a conference. Hr'g Tr. Oct. 15, 2008 1.  They represented that they had resolved most of the issues between them and that the only issue remaining for decision by this Court were those of attorney's fees and statutory damages.  Hr'g Tr. Oct. 15. 2008 1-2.  Neither party attempted to or gave oral argument on the merits of Plaintiff's pending motion.  The Court adjourned the hearing.

The parties reconvened two days later, on October 17, 2009.  They again represented to the Court that they had resolved most of their disputes by consent and stated that the sole remaining issue for the Court was damages.  Hr'g Tr. Oct. 17, 2008 2-3, 5-6, 11-12.  The Court even "thank[ed the parties] for resolving the main part of this case," telling them that "[y]ou [the parties] have done a better job with it than [the Court] could have done." Hr'g Tr. Oct. 17, 2008 15.  It then cancelled the jury trial on this matter and scheduled an evidentiary hearing on damages for November 5, 2009.  According to the parties, only the issue of damages would be addressed at the evidentiary hearing.  Hr'g Tr. Oct. 17, 2008 2-3, 5-6, 11-12.

And this was, in fact, what occurred at the November 5-6, 2008 evidentiary hearing.

Based on what occurred at these three hearings and the language of the Consent Order, the Court found, and continues to find, that the parties had resolved the merits of Plaintiff's claims for trademark infringement and cybersquatting by consent. First, the parties both represented to the Court that the only remaining issues were those of damages.  Second, neither party had offered any oral argument on Plaintiff's Motion for Summary Judgment on the trademark or cybersquatting claims.  Instead, the parties declined oral argument on this issue and simultaneously stated that they had resolved all but one of the issues between them by consent.

"Given the serious and significance of this issue" of Defendants' liability for these claims, Def.'s Mot. for Recons. 4, it would have been appropriate for the parties to submit some argument regarding the two potential bases for Defendants' liability.  At the very least, had Defendants expected the Court to decide the merits of these claims, they would have offered to answer the Court's questions, as counsel was already before the Court.  When both parties (repeatedly) represent to the Court that they have resolved most of the issues between them and only one issue remains, they are necessarily representing that they have resolved all of the issues but that one.  It also

necessarily means that that one issue is actually *in* issue.  The
Court has no reason to second-guess the parties' representations
on settlement matters.

　　　　To this, Defendants argue that "[n]o admission of
liability was necessary for the Court to decide the issues before
it in the evidentiary hearing."  Defs.' Mot. for Recons. 5.
According to Defendants, the issues were: "(1) whether this case
was "exceptional" for purposes of attorneys fees and costs under
15 U.S.C. § 1117(a), and (2) whether statutory damages should be
awarded for cybersquatting under 15 U.S.C. § 1117(d)."  Defs.'
Mot. for Recons. 5.  Just two paragraphs prior, however,
Defendants submit that "[l]iability is obviously the most
important issue in any trademark infringement or cybersquatting
claim since, without liability, there can be no damages, much
less an award of attorney's fees and costs."  Defs.' Mot. to
Recons. 4.  It appears that even Defendants do not believe their
own argument.

　　　　Further, a court may not award the attorney's fees
specifically authorized by 18 U.S.C. § 1117 without first finding
that the party in whose favor it makes this award is "the
prevailing party."  18 U.S.C. § 1117(a).  It may only award
statutory damages "[i]n a case involving a violation of section
1125(d)(1) of this title."  18 U.S.C. § 1117(d).  In its
decision, the Court found that Plaintiff was the prevailing

party,[1] and that a violation of 18 U.S.C. § 1125(d)(1) - the anti-cybersquatting provision - had occurred by virtue of Defendants' admission of liability for trademark infringement in the Consent Order. Mem. Op. 6. Based on these findings, it could thus proceeded to address the only issues remaining before the Court - those of attorney's fees under § 1117(a) and statutory damages under § 1117(d). Mem. Op. 6.

It is disingenuous for Defendants to now argue that they only consented to abbreviating the Court's hearing on the merits and proceeding directly to an evidentiary hearing on damages, when that two-day evidentiary hearing would have only become relevant in the later event that the Court issued a decision on the merits in Plaintiff's favor. First, the Court is not in the habit of expending judicial resources to hear two days of argument and evidence that may or may not be relevant. This is especially true after the parties declined to provide it with the benefit of oral argument on issues that were immediately relevant - those of trademark infringement and cybersquatting. Second, it is not reasonable for counsel or client to undertake two days of argument and evidence that are irrelevant and

---

[1] Plaintiff argues that the Court could have awarded attorney's fees to Plaintiff without finding that Defendants had actually infringed on its trademarks or admitted liability therefor. Pl.'s Opp'n 3-5. It submits that it was a "prevailing party" by virtue of the Consent Order, which entitled it to the injunctive relief requested in the Complaint. Pl.'s Opp'n 3. The Court finds that it need not address this issue, given that it stands by its original interpretation of the parties' Consent Order.

unnecessary if it is victorious.  Third, arguments and evidence
pertaining to damages are regularly heard separately, and
subsequently, from the merits.

   Defendants admitted liability for trademark
infringement and cybersquatting.  Any other intent by Defendants
(at the time of the evidentiary hearing) would have been
inconsistent with that hearing.  Defendants simply may not have
it both ways in this case: a quick exit to costly litigation and
leaving damages issues that could presumably not be settled for
decision by the Court, but yet ignoring the necessary antecedents
to an award of attorney's fees and statutory damages.

   Defendants also argue that their alleged admission of
liability would have rendered the two-day evidentiary hearing
"superfluous."  Defs.' Mot. for Recons. 7.  The Court disagrees.
The primary purpose of the hearing was to determine to what
remedy Plaintiff was entitled for Defendants' trademark
infringement and cybersquatting.  Throughout this proceeding,
Plaintiff repeatedly requested the remedies of attorney's fees
and statutory damages.  A court in this circuit may only award
attorney's fees for trademark infringement after making a
specific finding that Defendants' infringement was "exceptional."
*Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 599
(4th Cir. 1991).  In addition, the amount of an award of
statutory damages for a cybersquatting violation lies within the

discretion of the court.  15 U.S.C. § 1117(d) (A court may award an amount of "not less than $1000 and not more than $100,000 per domain name, as the court considers just").  The evidence and arguments offered at the evidentiary hearing were necessary for the Court's findings on the remaining issue of damages.  To confirm this, one only need to review the Memorandum Opinion and Order discussing these issues and relying on "the  credibility of the witnesses, the law, and the evidence presented."  Mem. Op. 1.

At the hearing on the instant motion, Defendants also presented some additional arguments weakly supporting their motion for reconsideration.  They, however, merely repeated Defendants' theory of the case and confirmed their disagreement with the Court's assessment of the import and weight of the evidence of exceptional circumstances and cybersquatting.  Hr'g Tr. July 14, 2009 5-7.  Not only has the Court already disagreed with Defendants' proffered assessments of the evidence, but "[a] party's mere disagreement with the Court's ruling does not warrant a rule 59(e) motion, and such motion should not be used to rehash arguments previously presented." *Consulting Eng'rs, Inc. v. Geometric Software Solutions & Structure Works, LLC*, 2007 WL 2021901, at *2 (E.D. Va. July 6, 2007) (citations omitted). Defendants also raise arguments not previously made in this case. Hr'g Tr. July 14, 2009 11-12 (claiming that Plaintiff alleged a claim of unfair competition, rather than trademark infringement

to support Defendants' claim that they did not admit liability for trademark infringement).  "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance."  *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted).  In short, none of Defendants' arguments provide the Court with a basis to reconsider, alter, or amend the Judgment.

> B.   No Ruling on the Merits of Plaintiff's Trademark Infringement and Cybersquatting Claims was Necessary

Defendants next request that the Court, based on the briefing submitted by both parties in support of and opposition to Plaintiff's motion for summary judgment, rule on the merits of Counts I (trademark infringement) and III (cybersquatting).  As the Court has found, in section III.A, above, that Defendants admitted liability for trademark infringement and cybersquatting violations, it is wholly unnecessary for it to now decide these issues.

> C.   "Correction" of Two Specific Factual Findings is Unnecessary

Finally, Defendants object to two specific factual findings that the Court included in its May 14, 2009 Memorandum Opinion.  First, the Court stated that Defendants believed "that

the 'business of flexible compensation' was worth one million dollars per year and they wanted to divert this profit to themselves." Mem. Op. 11. Defendants object to the Court's use of the word "profit" in this statement; they submit that the more appropriate word is "revenue." Defs.' Mot. for Recons. 14. "Revenue," they submit, is more consistent with the deposition testimony of Defendant Hawks, in which he stated that "an enterprise like [ECFC] could generate in excess of a million dollars in revenue . . ." Hawks Depo. 98-99.

The Court will not amend its memorandum opinion to reflect this minor change in wording. This change would in no way affect the outcome of the case, or even the relative weight of the evidence. Whether Defendants hoped to obtained one million dollars of total revenue or of profit by means of their trademark infringement and cybersquatting is a minor and irrelevant distinction. It certainly does not rise to the level of a "manifest injustice" that the Court must prevent by altering the judgment. *Pacific Ins. Co.*, 148 F.3d at 403.

Defendants also object to the following statement in the Court's May 14, 2009 memorandum opinion: Defendants "intended to harm Plaintiff and 'steal' its business by adopting [Plaintiff's] corporate name, registering and using the Marks, and creating confusion regarding Plaintiff's website." Mem. Op. 21. In this sentence, Defendants object to the Court's use of "a

14

figurative statement" that Hawks made during his deposition -
that Plaintiff had "effectively stolen" the business from
Defendant Feltman  - and "converted [it] into an assertion that
Defendants themselves wanted to harm Plaintiff by stealing it
back."  Defs.' Mot. for Recons. 15.  Defendants submit that the
more appropriate verbiage for the Court to employ would have been
directly lifted from another portion of Hawks' deposition
testimony, in which he stated that Defendants believed that this
was "an opportunity [whereby] [Defendant Feltman] could retrieve
his business by competing directly against [Plaintiff]."  Hawks
Depo. 47.  Thus, it wishes for the Court to Amend its memorandum
opinion to replace the word "steal" with the phrase "compete
with."  Defs.' Mot. for Recons. 15.

        The Court declines to amend its opinion in this fashion
for the same reasons that it declines to substitute the word
"revenue" for the word "profit."  Further, the Court's finding
that Defendants intended to "steal" Plaintiff's business, rather
than merely "compete with" it for clients and work, is fully
supported by the evidence.  It is consistent with the Court's
ultimate decision to award $20,000 in statutory damages and
attorney's fees to Plaintiff.

15

**V. Conclusion**

For these reasons, the Court will deny Defendant's

Motion for Reconsideration.

_____ An appropriate Order will issue.


August 20, 2009                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE