IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                )
EMPLOYERS COUNCIL ON            )
FLEXIBLE COMPENSATION,          )
                                )
      Plaintiff,                )
                                )
                                )
          v.                    )        1:08cv371 (JCC)
                                )
                                )
KENNETH FELTMAN et al.,         )
                                )
      Defendants.               )
                                )
```

# M E M O R A N D U M    O P I N I O N

This matter is before the Court on Plaintiff's, May 29, 2009 Amended Petition for Attorney's Fees and Costs.  (Dkt. 223.) For the following reasons, the Court will grant in part and deny in part Plaintiff's Petition.

## I. Background

On April 17, 2008, Plaintiff filed a complaint ("Complaint") in this Court against Defendants Feltman, Hawks, and ECFC Ltd. (collectively, "Defendants") alleging six counts: (1) trademark and service mark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) copyright infringement; (3) violation of the Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (4) breach of fiduciary duty (against Defendant Feltman only); (5) common law civil

conspiracy; and (6) interference with business and business expectations. The Complaint requested various injunctive relief baring Defendants from using various marks, names, logos, and internet addresses (the "marks"), along with compensatory, punitive and statutory damages and attorney's fees. On Plaintiff's subsequent request, the Court dismissed Count II (Dkt. 70) and, as part of a settlement agreement, Counts IV-VI of the Complaint without prejudice (Dkt. 206).

On June 18, 2008 and upon the agreement of the parties, the Court entered a preliminary injunction wherein Defendants agreed to withdraw any objections to the Court's personal jurisdiction over them and not to use Plaintiff's marks pending the outcome of the case. (Dkt. 73.) On September 11, 2008, Plaintiff filed a Motion for Summary Judgment on Counts I and III. Defendants opposed the motion. Prior to the summary judgment hearing, the parties represented to the Court that they had settled almost all of the issues between them, and so the Court adjourned without argument. On October 22, 2008, the Court entered a "Permanent Injunction (consent) Order" ("Consent Order") in which Defendants agreed "not to contest further the distinctiveness of Plaintiff's marks" or "Plaintiffs [sic] ownership of or rights in" those marks, and agreed "that Plaintiff's marks are subject to the protections of the Lanham Act." (Dkt. 181, 1-2.) The Consent Order also permanently

enjoined Defendants from using, in any manner, Plaintiff's marks
and any other marks or names affiliated with Plaintiff, or
anything similar thereto.  Defendants also agreed to provide a
list of all trade, business, and domain names registered by
Defendants and their agents since January 1, 2008 and to transfer
the domain name "ecfc.com" to Plaintiff.

As all other issues were resolved by negotiation
between the parties, what remained to be addressed was
Plaintiff's request for statutory damages and attorney's fees.
The parties submitted proposed findings of fact on November 4,
2008.  The Court held an evidentiary hearing on the remaining
issues of statutory damages and attorney's fees on November 5 and
6, 2008.  The Court issued a Memorandum Opinion and Order
disposing of those issues on May 14, 2009 and granting in part
Plaintiff's request for statutory damages and attorney's fees.
The Court awarded damages in the amount of $20,000 out of a
maximum of $100,000, and attorney's fees in an amount to be
determined.  Plaintiff filed a Petition for attorney's fees and
costs that was opposed by Defendants and this matter is currently
before the Court.

## II.  Standard of Review

As this Court stated in its May 14, 2009 Memorandum
Opinion, Congress did not "contemplate that the award of
attorney's fees [would] become an ordinary thing in patent

suits."[1]  Mem. Op. 23, *citing Merc Exchange, LLC v. eBay, Inc.*,
521 F. Supp.2d 526, 528 (E.D. Va. 2007)(citations omitted).
"Rather, the purpose of [35 U.S.C.] Section 285 is to 'provide
discretion where it would be grossly unjust that the winner be
left to bear the burden of its own counsel which prevailing
litigants normally bear.'" *Id.* (citations omitted).  Here,
Plaintiff "bears the burden of demonstrating the reasonableness
of the fees it seeks to recover." *Plyler v. Evatt*, 902 f.2d 273,
277 (4th Cir. 1990).  "In calculating an award of attorney's
fees, a court must first determine a lodestar figure by
multiplying the number of reasonable hours expended times a
reasonable hourly rate." *Robinson v. Equifax Info. Servs.,* 560
F.3d 235, 243 (4th Cir. 2009)(citations omitted).  To determine
"what constitutes a 'reasonable' number of hours and rate . . . a
district court's discretion should be guided by the following
twelve factors" first set out in *Johnson v. Ga. Highway Express,
Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  *Robinson v. Equifax
Info. Servs., LLC*, 560 F.3d 235, 2009 WL 656814, at *6 (4th Cir.
2009) (citations omitted).  Those factors are:

> (1) The time and labor required . . . .
> (2) The novelty and difficulty of the questions . . . .
> (3) The skill requisite to perform the legal service
>     properly . . . .

---

[1] Congress employed identical language in 35 U.S.C.A. § 285, governing attorney's
fees in patent infringement actions, and in 15 U.S.C.A. § 1117(a), governing
attorney's fees in trademark actions. Given the parallel language, courts apply the
same standards in both cases. *See, e.g.*, *CJC Holdings*, 979 F.2d 60, 65 (5th Cir. 1992).

(4) The preclusion of other employment by the attorney
            due to the acceptance of the case . . . .
        (5) The customary fee . . . .
        (6) Whether the fee is fixed or contingent . . . .
        (7) Time limitations imposed by the client or the
            circumstances . . . .
        (8) The amount involved and [] results obtained . . . .
        (9) The experience, reputation, and ability of the
            attorneys . . . .
        (10) The "undesirability" of the case . . . .
        (11) The nature and length of the professional
             relationship with the client . . . [and]
        (12) Awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

        The "Supreme Court and the Fourth Circuit have
acknowledged the district court's discretion to depart from the
lodestar when an award of that figure would be excessive in light
of a plaintiff's limited success." *Lilienthal v. City of Suffolk*
322 F.Supp.2d 667, 674 -675 (E.D.Va.,2004) *citing Hensley v.
Eckerhart*, 461 U.S. 424, 436-37, 103 S.Ct. 1933, 76 L.Ed.2d 40
(1983); *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th
Cir.1998); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th
Cir.1995). Because the "degree of success obtained by the
plaintiff is the 'most critical factor' in determining the
reasonableness of a fee award, the district court 'may simply
reduce the award to account for the limited success.'" *Lilienthal
v. City of Suffolk*, 322 F.Supp.2d 667, 675 (E.D.Va. 2004) *quoting
Hensley*, 461 U.S. at 436-37. There is no "precise formula" for
making this reduction to the lodestar amount; however, the court

may either "reduce the overall award" or "identify specific hours that should be eliminated." *Hensley*, 461 U.S. at 436-37.

This Court will evaluate the Plaintiff's attorney's fee Petition and the Defendants' Objections within this framework.

### III. Analysis

Pursuant to the Court's May 14, 2009 Memorandum Opinion and Order, Plaintiff filed a motion seeking reimbursement of the attorney's fees and costs it incurred in this litigation. In all, it seeks attorney's fees in the amount of $559,593.99 and costs in the amount of $36,888.04. (Plaintiff's Amended Motion ("Pl.'s Am. Mot.") ¶¶ 15, 18, 20.) The total fees requested include $466,420.00 for DiMuroGinsburg PC (DG) litigation fees, $16,012.50 for DG's preparation of the motion for attorney's fees, $42,199.87 for Hogan & Hartson LLP (H&H) litigation consulting, $22,277.25 for H&H to oppose Defendants' PTO applications, and $12,684.37 for H&H to reinstate Plaintiff's corporate charter. (Pl.'s Am. Pet. 16-17, 19-20.) Plaintiff also requests $34,407.31 in expenses incurred by DG and $2,480.73 in expenses incurred by H&H. In support of the requested amounts, Plaintiff submits seven categorized tables of fees and costs, the relevant invoices and receipts, and affidavits from Mr. DiMuro of DG, Messrs. Lyden and Silver, both of H&H, and three other attorneys unrelated to this matter who have offices in Northern Virginia. (Pl.'s Am. Mot. Exs. 1, 2.)

Defendants raise a number of objections to the requested attorney's fees and expenses. First, they submit that the total fee amount is disproportionate to both the stakes in this case and to Plaintiff's level of success. (Defendants' Memorandum in Opposition to Plaintiff's Motion ("Defs.' Mem. in Opp'n" 3.) Second, they argue that Plaintiff improperly requests reimbursement for fees incurred on "matters that were not part of this litigation," "issues that were [not] raised in this case," and arguments or issues that "were unsuccessful." (Defs.' Mem. in Opp'n 3.) They also argue that the Court should not award the entire request because it "includes overbilling by [] DiMuroGinsburg." (Defs.' Mem. in Opp'n 3.) Finally, they request that the Court exclude all of the H&H fees and costs "because 'expert fees' are not allowed in an award of costs" and any H&H fees that are not "expert fees" were incurred "on matters that were not part of this litigation." (Defs.' Mem. in Opp'n 3.) The Court will address each of Plaintiff's seven requests and Defendants' objections thereto below.

A.    Hogan & Hartson Fees

The petition includes a total of $79,592.22 in fees and costs billed to Plaintiff by H&H and supported by H&H invoices to Plaintiff's Chairman, David M. Carver. (Pl.'s Am. Mot. 19 and Ex. 1-G.) Plaintiff divides these fees into four categories:

litigation consulting, opposing the trademark applications,
corporate reinstatement, and costs.

1. *Table IV: $42,199.87 to "Consult on the
   Litigation"*

Defendants object to all of the fees claimed by
Plaintiff in Table IV: litigation consulting.  Pl.'s Am. Mot. 19.
They argue that none "were expended in the litigation," as
required by *Hensley* [*v. Eckerhart*, 461 U.S. 424 (1933)], . . .
except insofar as Mr. Lyden [of H&H] provided services as an
expert witness."[2]  (Defs.' Mem. in Opp'n 17-18.)  Defendants then
submit that all expert witness fees "must be treated as a
reimbursable cost subject to 28 U.S.C. § 1920" and Plaintiff is
only entitled to recover a $40.00 expert witness fee.  Defs.'
Mem. in Opp'n 18.  The Court will address the latter argument in
section III.D.1, infra, and the former now.

After reviewing the specific facts of this case,
particularly the relevant invoices submitted by the Plaintiff,
the "consulting fees" are best divided into two categories: those
that were incurred prior to November 1, 2008 and those that were
incurred thereafter.  The litigation consulting fees incurred
prior to November 1, 2008 are made up of 53 hours by Mr. Lyden,

---

[2]  In *Hensley*, the Supreme Court discussed the method by which district
courts should calculate a reasonable attorney's fee award.  461 U.S. at 433.
It found that the "most useful starting point for determining the amount of a
reasonable fee is the number of hours reasonably expended on the litigation
multiplied by a reasonable hourly rate."  *Id.*  A prevailing party may not
recover for hours not "reasonably expended," nor those not "expended on the
litigation."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d at 243 (internal
quotations and citations omitted).

4.5 hours by Mr. Silver and 1.5 hours by Mr. Smith.  (Pl.'s Am.
Mot. Ex. 2-A.)  The Court has reviewed the substance of the
relevant invoices and finds that they relate to Plaintiff's
pursuit of its claims in this Court, not to Mr. Lyden's later
testimony as a trademark expert in the evidentiary hearing on
November 4-5, 2008.  The Court will not disallow the 59 pre-
November hours billed by Messrs. Lyden, Silver, and Smith out-of-
hand, as Defendants request.  Instead, it will evaluate their
reasonableness, along with the bulk of the requested DG
litigation fees, in section III.C below and in accordance with
the factors set forth in *Johnson v. Ga. Highway Express, Inc.*,
488 F.2d at 717-19.*3*

　　　　The litigation consulting category also includes hours
billed by both Mr. Lyden and Mr. Silver between November 1 and
December 10, 2008.  (Pl.'s Am. Mot. Ex. 2-A.)  The Court has
reviewed these invoices and finds that these hours, although
coded by Plaintiff as "litigation consulting," actually relate
Mr. Lyden's expert testimony at the November evidentiary hearing,
the PTO protests, and Plaintiff's corporate reinstatement (Table

---

　　　*3*　It is neither inappropriate nor unheard of for a plaintiff to have
retained both trial counsel and counsel with an expertise in trademark issues
to pursue its case.  *See Deadwyler v. Volkswagen of Am., Inc.*, 748 F. Supp.
1146, 1156 (W.D.N.C. 1990) (awarding fees incurred by trial counsel and local
counsel); *Brunson/Ross Commc'ns, LLC v. BIP, Inc.*, 2005 WL 2135143, at *3, 5
(W.D. Va. Sept. 1, 2005) (awarding fees incurred by personal counsel and trial
counsel).

VI).  The Court will consider these hours, then, as part of those respective categories.

   2.   *Table V: $22,227.25 to "Oppose PTO Applications"*

   Defendants object to Plaintiff's request to recover the H&H fees in Table V because, they submit, the trademark applications were objected to in a "completely separate proceeding" before the United States Patent and Trademark Office (PTO).  (Defs.' Mem. in Opp'n 18; See Pl.'s Am. Mot. 19.)  For its part, Plaintiff does not explain what specific activities were accomplished in the 68.25 hours it claims H&H attorneys spent opposing Defendants' trademark applications.  Table V simply refers the Court to Exhibit 2-A as a whole, which contains all H&H invoices except for one.  *(See* Pl.'s Am. Mot. 19.)  Plaintiff also does not explain how the activities billed for in the invoices relate to the litigation in this case.  *See Hensley*, 461 U.S. at 433.

   The Court notes that Plaintiff discussed Defendants' trademark applications in the instant proceeding, Compl. ¶¶ 42, 43, 49, 62, and argued that they were evidence of Defendants' bad faith, Pl.'s Mot. for Summ. J. 12.  To oppose the trademark applications filed with the PTO, Plaintiff filed protests with that body.  (Pl.'s Mot. for Summ. J. 12.)  Based on the evidence before the Court, the hours that H&H billed to oppose Defendants' trademark applications were to prepare for and conduct the

relevant proceedings before the PTO, and to negotiate with Defendants for withdrawal or abandonment of their applications. Because Plaintiff did not oppose such trademark applications in this suit, and in the absence of any explanation or supporting information from Plaintiff, the Court finds that the hours presented in Table V are not "hours reasonably expended on the litigation," *Hensley*, 461 U.S. at 433. It will deny Plaintiff's request for an award of the attorney's fees presented in Table V, *see* Pl.'s Am. Mot. 19, and all other H&H fees that relate to opposing Defendants' PTO applications. S*ee* section II.A.1, above.

3. *Table VI: $12,684.37 "for Reinstatement"*

Defendants also object to the attorney's fees that Plaintiff claims in Table VI because Plaintiff's efforts to reinstate itself as a District of Columbia corporation involved a "completely separate proceeding" from that before this Court. Defs.' Mem. in Opp'n 18. Here also, Plaintiff fails to provide a detailed explanation of what was accomplished in the hours that H&H billed for Plaintiff's corporate reinstatement. Table VI simply refers the Court to Exhibit 2-A, which contains all of the H&H invoices except for one. Pl.'s Am. Mot. 19. Plaintiff also fails to provide an explanation of how its reinstatement relates to the claims presented to this Court.

Plaintiff's original corporate charter lapsed while Defendant Hawks and/or his management company Radnor, Inc. (Radnor) were responsible for Plaintiff's day-to-day management. (Pl.'s Mot. for Summ. J. 12.) After it became aware of the lapse, Plaintiff successfully reinstated itself as a District of Columbia corporation with a new name because Defendants had reserved Plaintiff's former name for their own use. Compl. ¶ 51. After the Court entered the Consent Order and before March 20, 2009, Plaintiff changed its name back to its original name. (See Order of Mar. 20, 2009.) It appears that Mr. Silver, an H&H partner, spent time "effecting the terms" of that order "so that [Plaintiff] could regain the name in which it was originally incorporated." (Silver Decl. ¶ 4.)

The attorney hours required for Plaintiff to locate a new name, file for corporate reinstatement, and then file again to use its former name, however, are not "hours reasonably expended on the litigation," *Hensley*, 461 U.S. at 433. Plaintiff successfully reinstated itself prior to filing the Complaint in this action (Compl. ¶ 51) and it was necessary for Plaintiff to pursue reinstatement regardless of this litigation if Plaintiff wished to continue doing business in the District of Columbia.[4]

---

[4] Additionally, Plaintiff did not, and could not have presented the issue of reinstatement to this Court. The proper means for it to obtain reinstatement was with the District of Columbia government. Also, although the Consent Order gave Plaintiff the right to use its former name again, nothing obligated it to do so.

The Court will deny Plaintiff's request for the attorney's fee requests presented in Table VI (*See* Pl.'s Am. Mot. 19) and all other H&H fees that relate to Plaintiff's corporate reinstatement, *see* section II.A.1, above.

### 4. *Table VII: $2,480.73 in Costs*

Defendants object to the costs presented in Table VII on the same bases that they objected to the three previous categories of H&H fees. (Defs.' Mem. in Opp'n 23.) These objections are evaluated with the rest of Plaintiff's Petition for costs in Section III.D below.

### B. DiMuroGinsburg Attorney's Fees

Next, Plaintiff requests the attorney's fees and costs incurred by DG, its primary counsel. These requests include $466,420.00 in litigation attorney's fees (Table I), $16,012.50 in attorney's fees incurred to prepare for the pending petition (Table II), and $34,407.31 in expenses (Table III). (Pl.'s Am. Mot. 16-18.) Defendants oppose some portion of all of these requests. The Court will address each in turn.

### 1. *Table I: Litigation Attorney's Fees*

First, Defendants submit that Plaintiff is not entitled to an award of all of its claimed DG litigation fees because not all of the hours listed in Table I were "expended on the litigation" in accordance with *Hensley*. 461 U.S. at 433. Defendants object to the fees in Table I to the extent that they

were incurred to defend Plaintiff against a suit filed by Defendants in the District of Columbia Superior Court ("D.C. Litigation") or in arbitration proceedings between ECFC and Radnor ("Arbitration"), and to the extent that they relate only to Plaintiff's corporate reinstatement and PTO protests. (Defs.' Mem. in Opp'n 23.) Defendants also object to the fees in Table I because some of the invoices supporting those hours are redacted or are insufficiently specific and do not enable Defendants to determine whether the billed-for hours were actually incurred to pursue the instant litigation. Defendants include their own "Table 1," listing the fees that they request the Court deny as either unrelated to the case before the Court or insufficiently detailed. (Defs.' Mem. in Opp'n 24-25.) In total, Defendants request that the Court deny $19,347.50 of the requests in Table I for these reasons. The Court agrees that the items noted by Defendants relate to proceedings other than those before this Court.[5] As Plaintiff have failed to provide sufficient evidence that these fees were both reasonable and related to the litigation the Court will exclude the $19,347.50 on this basis.

In their third basis for objection, Defendants submit that Table I reflects DG's overbilling and failure to exercise proper billing judgment. (Defs.' Mem. in Opp'n 34.) As an

---

[5] In a number of the entries on Plaintiff's Table 1, part of the entry relates to the litigation and part does not, making it impossible to determine how much of the time billed with each entry was actually spent on the litigation.

14

example, Defendants note that DG billed Plaintiff for 180.4 hours - resulting in $59,659.50 in fees - to prepare its motion for summary judgment, memorandum in support, and exhibits. (Defs.' Mem. in Opp'n 34.) Defendants list the objected-to fees that Plaintiff incurred to prepare these filings in Table 4. (Defs.' Mem. in Opp'n 35-39.) They request that the Court reduce all of the remaining DG litigation fees by fifty percent because of its lack of billing judgment. (Defs.' Mem. in Opp'n 34.) This argument relates to whether or not the hours Plaintiff's counsel billed on this matter were "reasonable," and so the Court will address this objection in section III.C.1, infra.

> 2. *Table II: Preparation of the Petition for Attorney's Fees*

Next, Defendants object to the attorney's fees that Plaintiff requests in Table II - for preparation of the instant petition. (Defs.' Mem. in Opp'n 39.) Defendants submit that the petition was prepared improperly because it includes requests by Plaintiff for a large number of fees that are not related to this litigation or which relate only to unsuccessful claims or that were billed at excessive hourly rates. (Defs.' Mem. in Opp'n 39.)

A court has the discretion to award attorney's fees and costs incurred in the preparation of a petition requesting attorney's fees. *See Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986) (approving attorney's fees incurred to prepare a petition

for fees stemming from a successful § 1983 case); *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 769-70 (D. Md. 2001) (*citing Daly*, but finding 107.9 hours spent to prepare a fee petition excessive).  In *Daly*, the Fourth Circuit found that it was not abuse of discretion for the district court to find the expenditure of 37.9 hours to prepare a straightforward fee petition unreasonable.  790 F.2d at 1080.  Several years later, it also found that, in a straightforward case, it would be unreasonable to spend more than twenty percent of the total hours billed on the related fee petition.[6]  *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 966 (4th Cir. 1990).

The Court finds it unreasonable for Plaintiff to have spent 34 hours of partner time and 9.5 hours of associate time, for a total of 43.5 hours and $16,012.50, to prepare its petition for attorney's fees.  *See Daly*, 790 F.2d at 1080.  This is especially true because none of the hours involved were billed by other legal professionals.  According to Table II, the bulk of this petition, presumably including the preparation of the seven tables and the assembly of several hundred pages of exhibits, was

---

[6] The Court finds that the twenty percent baseline for reasonableness is not applicable here because this is not a straightforward case of the kind discussed in *Service News*.  Were the Court to apply the twenty percent guideline, it would result in a baseline of approximately 300 hours allowed for the preparation of the fee petition, based on a total of approximately 1500 litigation hours billed by DG and H&H.  *See* section III., below.  This number is excessive because the number of claims and discovery motions filed in this case, which increased Plaintiff's litigation attorney's fees, do not make Plaintiff's petition for attorney's fees more complex or difficult to prepare.

completed by a name partner at a rate of $400 per hour.  See Pl.'s Am. Mot. 17.  As Plaintiff has failed to offer sufficient support to demonstrate that its fees in preparing the Petition were reasonable, this Court, based on its own review of the exhibits submitted by the parties and other evidence before it, will cut this fee request by 50% and award Plaintiff $8,006.25 in fees for the preparation of the fee petition.

### 3. *Table III: Costs*

The Court will address the Plaintiff's request for costs, including its request for expert fees in Section III.D below.

### C. <u>Reasonable Fee</u>

The Court now turns to the bulk of the fees requested in the Plaintiff's Petition and evaluates the "reasonableness" of these fees.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).  As this Court has said previously, it is the party requesting fees that bears the burden of demonstrating the reasonableness of what it seeks to recover.  *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998).

To determine "what constitutes a 'reasonable' number of hours and rate . . . a district court's discretion should be guided by the following twelve factors" first set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974))*. Robinson v. Equifax Info. Servs., LLC*, 560 F.3d at 243-44 (4th Cir. 2009) (citations omitted). Again, those factors are:

> (1) The time and labor required . . . .
> (2) The novelty and difficulty of the questions . . . .
> (3) The skill requisite to perform the legal service properly . . . .
> (4) The preclusion of other employment by the attorney due to the acceptance of the case . . . .
> (5) The customary fee . . . .
> (6) Whether the fee is fixed or contingent . . . .
> (7) Time limitations imposed by the client or the circumstances . . . .
> (8) The amount involved and the results obtained . . . .
> (9) The experience, reputation, and ability of the attorneys . . . .
> (10) The "undesirability" of the case . . . .
> (11) The nature and length of the professional relationship with the client . . . [and]
> (12) Awards in similar cases.

*Johnson*, 488 F.2d at 717-19. After determining the amount of reasonable hours and fees, "the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244 (internal quotations and citations omitted). Finally, the court should "award[] some percentage of the remaining amount, depending on the degree of success enjoyed." *Id.* Because the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the

reasonableness of a fee award, the district court 'may simply reduce the award to account for the limited success.'" *Lilienthal v. City of Suffolk*, 322 F.Supp.2d 667, 675 (E.D.Va. 2004) *quoting Hensley*, 461 U.S. at 436-37.

## 1.  *Reasonable Hours*

After subtracting those hours that the Court determined (in sections III.A and B above) do not relate to this matter, the Court will consider the remaining hours under the twelve factor test laid out in *Johnson*.

The first *Johnson* factor relates to the time and labor required in a case.  Plaintiff submits that the hours it spent on this case were reasonable and that any hours in excess of normal were incurred "exclusively" as a result of Defendants' actions. It complains of having to defend against Defendants' unsuccessful motion to dismiss for failure to state a claim and for lack of personal jurisdiction over Defendant Hawks.  Plaintiff also believes that Defendants' responses to its discovery requests were "obstructionist"[7] and their filing of the Hawks affidavit prior to the evidentiary hearing increased the hours required in this action.  Defendants note that the Hawks affidavit was clearly filed in accordance with the Court's deadlines for

_____

[7] The Court notes that, on March 11, 2009, the magistrate judge awarded Plaintiff attorney's fees for its efforts to oppose Defendants' first set of discovery objections.  [Dkt. 211.] Defendants paid these fees in the amount of $8,480, on April 8, 2009. [Dkt.  217.] Plaintiff does not request these fees again in this petition.

supplementary briefing before the evidentiary hearing. Defs.'
Mem. in Opp'n 10. They also argue that their motion to dismiss
for lack of personal jurisdiction was appropriate because, even
though the Court found that it had jurisdiction, the facts
ultimately shown at the evidentiary hearing negated this finding,
as Mr. Lyden, Plaintiff's trademark expert stated that Plaintiff
had no factual or legal basis for its claim of fraud (on which
the jurisdiction over Hawks was based). *See* Hr'g Tr. 255-77.
Defendants thus submit that Plaintiff "bluffed" the Court into
accepting specific jurisdiction over Hawks and request that the
Court deny Plaintiff any fees related to this issue.[8] (Defs.'s
Mem. in Opp'n 31.)

Defendants further note that they consented to both a
preliminary injunction and a permanent injunction and that they
cooperated with Plaintiff from the outset and agreed to an
expedited discovery schedule. (Defs.' Mem. in Opp'n 7.) They
also argue that Plaintiff filed excessive motions and failed to
confer with Defendants prior to its filings. The docket,
Defendants note, includes 219 entries, including 114 filings and
21 motions by Plaintiff between April 14, 2008 and November 6,
2008. (Defs.' Mem. in Opp'n 8.) During this time, Plaintiff
filed three sets of written discovery requests, nine third-party

---

[8] Defendants' Table 3 details the fees that relate, at least in part, to
the dispute regarding the Court's personal jurisdiction over Hawks. It
includes 152.8 hours and $30,425.00 in fees. Defs.' Mem. in Opp'n 32-34.

document subpoenas, and took two multi-day depositions.  In contrast, Defendants submitted 41 filings, including nine motions and only one set of written discovery requests.  (Defs.' Mem. in Opp'n 8.)  As noted above, Defendants also assert that Plaintiff failed to exercise billing judgment with respect to this matter.

The Court has reviewed all of these arguments and it finds that the total number of litigation hours that Plaintiff submits with this petition are excessive and show a failure to exercise billing judgment.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("The applicant should exercise "billing judgment" with respect to hours worked.").  Plaintiff devoted excessive resources to this case, very obviously conducting a paper-heavy litigation with a clear eye toward the eventual reimbursement of its attorney's fees and costs.  *See Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1360 (4th Cir. 1995).  Mr. DiMuro, the most expensive attorney on the case and a name partner at the firm, billed more hours than any other attorney on the case - billing over 40% of the total hours.  (Pl.'s Am. Mot. 16.)  Overall, partners at DiMuroGinsberg billed more time to the case than the more affordable associates and paralegals.  *Id.* Plaintiff did not "make a good faith effort to exclude from [its] fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  While Plaintiff did obtain its desired outcome in this case, the excessive number of

hours that it billed to do so were neither necessary nor
reasonably aimed at that end.  The first factor weighs in favor
of the Defendants.

With respect to the second and third factors, it
appears that this case presented issues of some novelty and
difficulty.  Had the merits of Plaintiff's claims for trademark
infringement and cybersquatting been left to the Court, it would
have been the first court in the nation to address this specific
issue.  This novelty is tempered, however, by the fact that
Defendants cooperated with Plaintiff throughout the course of
this case: repeatedly entering into consent orders with Plaintiff
and thereby significantly narrowing the issues before the Court.

Fourth, given the vast number of hours that DG billed
on this matter, it might appear that it was precluded from
pursuing work for other existing or potential clients during
those 1484.4 hours.  The Court agrees with Defendants, however,
that not all of these hours were necessary to ensure a smooth and
vigorous prosecution of this case.  Plaintiff chose to pursue
this matter in federal court on an expedited schedule.  It does
not appear that H&H's participation in this case precluded it or
any of the eight legal professionals who billed time on this
matter from pursuing other work.  *See* section III.A.1, above.

Neither party submits any information with respect to
the fifth factor - the customary fee for this work - beyond that
submitted with respect to reasonableness of each of the DG and

H&H legal professionals' hourly rates.  The Court will address those specific hourly rates in section III.C.2, below.  Further analysis of this factor is unnecessary.

The sixth factor relates to the fee that counsel expects to earn.  In *Johnson*, the Fifth Circuit referred to this factor as "[w]hether the fee is fixed or contingent."  488 F.2d at 717-19.  In *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), the Fourth Circuit case explicitly adopting the *Johnson* factors, the court referred to this factor as "the attorney's expectations at the out-set of the litigation." *Barber,* 577 F.2d at 226.  The Court will be guided by both of these descriptive titles in its analysis of this factor.

Defendants object to Plaintiff's failure to provide information about its fee arrangements with DG or H&H because it makes no representations about whether its fee "was fixed or contingent," *Johnson*, 488 F.2d at 717-19, or whether Plaintiff actually paid the amounts billed by these firms.  (Defs.' Mem. in Opp'n 14.)  In the Fourth Circuit, the existence and substance of fee arrangements "may aid in determining reasonableness" of the claimed fees.  *Blanchard v. Bergerson*, 489 U.S. 87, 93 (1989).  The amount that the prevailing party has actually paid counsel for its services does not, however, "impose an automatic ceiling" on the amount of an attorney's fee award.  *Id.*  Fee agreements,

as with all of the other factors addressed here, are merely one factor the Court considers. *Id.*

The seventh factor relates to any time limitations presented. Plaintiff submits that "[e]verything [in this case] had to be undertaken on an expedited basis" because it had to protect its name, business, and trademarks as soon as possible. (Pl.'s Am. Mot. 26.) Defendants submit that the expedited nature of the case was unnecessary given the preliminary injunction that Defendants consented to and abided by. They also submit that many of the "discovery obstructions" of which Plaintiff complains were simply the result of the numerous discovery requests made by Plaintiff during a truncated and expedited discovery schedule. (Defs.' Mem. in Opp'n 7-10.) The Court finds that Plaintiff does not merit an increased award of attorney's fees because it continued pursuing this action in an expedited fashion after it obtained a preliminary injunction against Defendants' objectionable conduct.

The eighth factor discusses the amount in controversy in the case and the result ultimately obtained by the prevailing party. Plaintiff brought six claims and pursued two of them to completion. It voluntarily dismissed four claims in response to either Defendants' Motion to Dismiss (Dkt. 69) or after a negotiated agreement with Defendants (Dkt. 206). Plaintiff did obtain all three of its desired remedies in this case: Defendants

consented to a permanent injunction enjoining all of the conduct to which Plaintiff objected in the Complaint, the Court awarded Plaintiff $20,000 out of a possible $100,000 in statutory damages, and the Court awarded attorney's fees to Plaintiff under the Lanham Act, 15 U.S.C. § 1117(a). It is important to note, however, that Defendants voluntarily contributed to Plaintiff's success by entering into the preliminary and permanent injunctions and leaving only the issues of attorney's fees and damages to be addressed by the Court. Further, it does not appear that the hours billed to Plaintiff on this matter bore any relation to the stakes in this case, nor to the actual damages that Plaintiff had sustained, which were minimal. Finally, the Court, while deciding in Plaintiff's favor, saw fit to award only $20,000 statutory damages out of a possible $100,000. *See* 18 U.S.C. § 1125(d). This factor is accounted for in part III.C.4 below.

The ninth *Johnson* factor relates to the experience, reputation, and ability of the attorneys who worked on this case. Neither party makes any argument as to this factor; however, the Court notes that it reviewed the submitted *curriculum vitaes* of the attorneys in this case and that attorney's DiMuro and Barnsback have appeared many times before this Court, additionally, a more comprehensive look at the billing rates and

experience of the attorneys on this case is discussed below in section III.C.2.

Factor ten, the undesirability of the case, weighs against an increased award because Plaintiff's counsel was already involved in the dispute between the parties, by means of its representation of Plaintiff in the Arbitration and the D.C. Litigation. Further, as noted above, Plaintiff itself elected to follow an expedited schedule throughout this case.

The eleventh factor relates to the nature and length of Plaintiff's professional relationship with counsel. In this case, it appears that its relationship with DG began in June 2007, at the outset of the Arbitration and the D.C. Litigation and will end when this case concludes. Pl.'s Am. Mot. 27-28. The party-counsel relationship thus extends beyond this particular proceeding, but not beyond the facts and issues presented.

The twelfth factor requires the Court to consider attorney's fees awards in similar cases. Neither party submits similar cases for the Court to evaluate. Plaintiff believes that there are no cases in this community "of similar complexity and circumstances." Pl.'s Am. Mot. 28. This factor is thus unhelpful in this case.

2. *Reasonable Rate*

The hourly rates for which the prevailing party requests reimbursement must also be reasonable. *Rum Creek Coal*

26

*Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (*citing Hensley*, 461 U.S. at 433).  The determination of the reasonableness of given rates is a "fact-intensive [one] and is best guided by what attorneys earn from paying clients for similar services in similar circumstances."  *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  As always, "the burden rests with the fee applicant to establish the reasonableness of a requested rate."  *Robinson*, 560 F.3d 235, 2009 WL 656814, at *7 (*quoting Plyler*, 902 F.2d at 277).  To meet this burden, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."  *Id.*

An attorney's actual billing rate provides a "starting point" for establishing a prevailing market rate.  *Rum Creek*, 31 F.3d at 175 (*citing Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993)).  The prevailing party can establish the market rate "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market."  *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987 (citations omitted).  This evidence must be submitted "[i]n

addition to the [billing] attorney's own affidavits." *Plyler*,
902 F.2d at 277 (citations omitted).  These affidavits are
discussed in part (b) below.

To help carry its burden to establish that its rates
are consistent with the prevailing market rates in the relevant
community, Plaintiff submits its invoices from DG and H&H.  The
DG invoices show that that firm charged $400 per hour for the
work of a name partner, $350 per hour for other partners, $250-75
per hour for various associates, $175 per hour for senior
paralegals, and $125 per hour for junior paralegals.  *See* DiMuro
Decl. ¶ 5.  The H&H invoices show that it charged $550 per hour
for the work of Mr. Lyden, $620.00 per hour for the work of Mr.
Silver, both partners, and $290.00 per hour for the work of Mr.
Frisbee, an associate.  Lyden Decl. ¶ 4, Ex. A; Silver Decl. ¶ 4.
 The invoices also show additional time charged at the following
rates: $715.00 per hour for work by "D. Davidson," $625.00 per
hour for work by "M. Lefkowitz," $575.00 per hour for work by "S.
Rausch," $200 per hour for work by "D. Smith," and $195.00 per
hour for "J. Brown."  Lyden Decl. Ex. A.

Plaintiff further supports these rates with
declarations from three independent attorneys: Philip J.
Hirschkop (Pl.'s Am. Mot. Ex. 4), Stephen Sayers (Pl.'s Am. Mot.
Ex. 5), and Robert Scully (Pl.'s Am. Mot. Ex. 6).  These three
attorneys have significant trial experience, including before
this Court, and submit that they have knowledge of the prevailing

28

market rates for attorneys in this area.  *See* Pl.'s Am. Mot. Exs.
4-6.  In their respective declarations, the attorneys verify that
the rates charged by DG in this case are within the prevailing
market rates for the services provided.  *See* Pl.'s Am. Mot. Exs.
4-6.  In addition, Mr. Hirschkop states that he reviewed the
pleadings, the decisions of this Court, and the DG billing
statements and attests that the services provided were reasonable
and necessary.  Pl.'s Am. Mot. Ex. 4.  The three declarants also
state that they believe that the rates charged by H&H attorneys
Mr. Lyden and Mr. Silver are reasonable.  Pl.'s Am. Mot. Exs. 4
¶ 7, 5 ¶ 4, 6 ¶ 4.

　　　　To further support the H&H hourly rates, Plaintiff
submits declarations by Mr. Lyden and Mr. Silver.  Mr. Lyden's
affidavit explains the hourly rates billed by himself and Mr.
Frisbee.  Lyden Decl. ¶ 4.  Mr. Silver's affidavit explains the
hourly rates billed by himself and other unspecified "associates
and non-lawyer legal professionals . . . who[m he] supervised."
Silver Decl. ¶ 4.  Given the high hourly rates billed by some of
these persons - between $195.00 and $715.00 - the Court must
presume that these hours were actually attributable to
"associates and non-lawyer legal professionals . . . who[m he]
supervised."  Silver Decl. ¶ 4.  This is tempered by the fact
that neither declaration provides any explanation of these rates
or the qualifications of the persons charging them.

In the Fourth Circuit, the rates actually charged by a petitioning attorney are evidence of reasonableness when it is shown that they have collected those rates in the past from the client. *Rum Creek*, 31 F.3d at 175. The prevailing party can establish the market rate "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (citations omitted). This evidence must be submitted "[i]n addition to the attorney's own affidavits." *Plyler*, 902 F.2d at 277 (citations omitted).

Based on this law, the Court finds that Plaintiff submits sufficient information for the Court to determine that the hourly rates charged by DG are reasonable, and it so finds. It has failed, however, to provided sufficient support for the rates charged by H&H. First, it only provides independent support for the rates of Messrs. Lyden, Silver, and Frisbee. Second, it does not provide even the titles of the other five billers on the H&H invoices. Third, the Court finds that the rates billed by the H&H attorneys are excessive for Northern Virginia, particularly when compared with the rates charged by

the more experienced partners at DiMuroGinsburg.  The rates are not in line with the "prevailing market rate" in the relevant "community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Instead, they appear to comport with hourly rates in the adjacent, but separate, District of Columbia community.  As noted by the Fourth Circuit, this community is not identical to the hourly rates that may be awarded to those attorneys practicing before this Court.  *Robinson*, 560 F.3d at 244.  These elevated rates will be taken into account in the Court's overall determination of the reasonableness of the fees.

The Plaintiff requested approximately $560,000 in fees. After eliminating the fees unrelated to the litigation discussed above, taking into account the *Johnson* factors as evaluated above, and appropriately reducing the rates of the Hogan & Hartson attorneys, this Court has determined a lodestar amount of $390,000 in fees is reasonable.

### 3.  *Unrelated Unsuccessful Claims*

Next, Defendants argue that the Court should not award to Plaintiff attorney's fees accrued in the abbreviated prosecution of Counts II (copyright infringement), IV (breach of fiduciary duty), V (civil conspiracy), and VI (interference with business and business expectancy) of the Complaint.  Defs.' Mem. in Opp'n 26.  Defendants are correct that, when the petitioning attorney "prevails on only some of the claims made, the number of

hours may be adjusted downward." *Rum Creek*, 31 F.3d at 174.
This type of downward adjustment only applies to those
"unsuccessful claims [that are] unrelated to successful ones."
*Robinson*, 560 F.3d at 244 (internal quotations and citations
omitted).

    In this case, the Court will not apply a downward
adjustment to the hours Plaintiff requests because it finds that
all six of its claims were related.[9]  They concerned the same set
of operative facts - namely, the actions that Defendants took to
obtain Plaintiff's trademarks, business, and profits for
themselves.  *See Hensley,* 461 U.S. at 432.  That Plaintiff
pursued to conclusion only two of its original six claims does
not mean that two-thirds of the attorney's fees it incurred were
unrelated to this action or to its ultimate success.  The Court
finds that the attorney's fees Plaintiff incurred in pursuing
this action are not separable by claim.

    4.  *Final Percentage Award Based on Success*

    The "degree of success obtained by the plaintiff is
the 'most critical factor' in determining the reasonableness of a

---

[9]The Supreme Court, in *Hensley* v. *Eckerhart*, 461 U.S. 424, 432 (1983),
explained that when a plaintiff brings distinctly different claims based on
different facts and legal theories, it cannot argue that work performed on an
unsuccessful claim was part of its ultimate victory.  Where a claim involves
"a common core of facts or . . . related legal theories," however, much of the
time expended on the case "will be devoted generally to the litigation as a
whole, making it difficult to divide the hours."  *Id.* at 435.  In such a case,
a court should not view the lawsuit as a series of discrete and unrelated
claims; instead, the court should "focus on the significance of the overall
relief obtained . . . in relation to the hours reasonably expended."  *Id.*

fee award, the district court 'may simply reduce the award to account for the limited success.'" *Lilienthal*, 322 F.Supp.2d at 675 *quoting Henslay*, 461 U.S. at 436.  Defendants have requested that this court reduce the amount of the fee request by 50%.  The Court has balanced Plaintiff's status as the prevailing party with the fact that the Court did not need to decide the merits of Plaintiff's trademark and cybersquatting claims because Defendants chose to enter into a Consent Order before those issues were fully before the Court.  Also, significantly, the only thing submitted to this Court for determination was the matter of statutory damages.  This Court determined that the Plaintiff merited only $20,000 out of a possible $100,000 in damages.  In making its determination regarding the relative success of the parties, this Court has taken into account its own reasoning in its 2009 Memorandum Opinion to restrict the Plaintiff's statutory damages.  Here the Court will not award merely 20% of the lodestar amount (to comport with the statutory damages award), nor will it award 50% of the fees as requested by the Defendants, but, in light of Plaintiff's success in achieving its injunctive goals balanced against its limited success in collecting statutory damages the Court will award 75% of the lodestar amount:  $292,500.  In so doing, this Court "applies 'a rough sense of equity' to its knowledge of the litigation at issue."  *Quantum Systems Integrators, Inc. v. Sprint Nextel*

*Corp.,* Dkt. 1:07cv491, Oct. 16, 2009, 2009 WL 3423848 *8 (E.D.Va. 2009); *Lilienthal*, 322 F.Supp.2d at 675. For the reasons stated above, Plaintiff shall be awarded $292,500 in fees.

        D.   <u>Costs</u>

            *1.   Expert Witness Costs*

        This Court will first address the $14,726.25 fee that Plaintiff requests for Mr. Lyden, a partner at H&H, to testify as an expert witness in trademark law at the evidentiary hearing. Defendants specifically object to this request. (See Pl.'s Am. Mot. Table III). Defendants argue that Plaintiff is only entitled to recover "a single $40 attendance fee (plus travel)" for Mr. Lyden's appearance at the hearing. (Defs.' Mem. in Opp'n 20.) Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." "Costs" that *may* be taxed to the non-prevailing party are listed in 28 U.S.C. § 1920. They are (1) court and service fees, (2) transcript fees, (3) printing and witness fees, (4) charges for copies "necessarily obtained for use in the case," (5) docket fees, (6) compensation for court-appointed experts and interpreters. *Id.* While § 1920 is permissive, allowing the Court to assess fees, 28 U.S.C.A. § 1821(b) provides that witnesses "*shall* be paid an attendance fee of $40 per day for each day's attendance." 28 U.S.C.A. §

1821(b)(emphasis added).  To determine which framework to apply (whether the Court *may* award compensation for experts or *shall* award a daily attendance fee), the Supreme Court has held that "absent contract or explicit statutory authority to the contrary," when the "prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of 1821(b)."  *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987); *see also Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300 (2006) (*citing Crawford*).  The statute at issue here, 15 U.S.C. § 1117(a) provides: when "a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover . . . the costs of the action."  15 U.S.C. § 1117(a). There is no explict authorization of expert fees in the statute and without an explicit statement authorizing the taxation or recovery of expert witnesses fees and costs by the prevailing party, the Court finds that 15 U.S.C. 1117(a) does not entitle the Plaintiff to the $14,726.25 it requests as an expert witness fee (See Pl.'s Am. Mot. 18) and instead, pursuant to 28 U.S.C. § 1821(b), the Court will award Plaintiff a $40 fee for the appearance of Mr. Lyden, a non-court-appointed witness.

*2.  DM Internal Copying Costs*

Defendants also object to the copying expenses that
Plaintiff submits to the Court in Table III.  These expenses
include $6,891.92 for internal copying, which consists of 54,818
copies charged at $0.25 for the first 250 pages and $0.12 per
page thereafter.  (*See* Defs.' Mem. in Opp'n 42.)  They also
include a charge for $246.13 in "copying fees paid to third
parties."  (Defs.' Mem. in Opp'n 42.)  Defendants submit that the
total number of copies made and the fees charged for internal
copying were both excessive.  They argue that the Court should
award Plaintiff reimbursement for a percentage of the copies DG
made and at a price per page that DG could have obtained from a
third-party source at a discounted volume rate or, in the
alternative, that the number be reduced "by at least 50%."
(Defs.' Mem. in Opp'n 42.)

As noted above, copying fees are a reimbursable cost
under 28 U.S.C. § 1920(4) when they are "necessarily obtained for
use in the case."  The Court must therefore attempt to determine
how many of Plaintiff's 54,000 copies were "necessary."  Given
the large volume of issues and production in this case, a
substantial amount of copying would be necessary.  In fact,
Plaintiff did submit several thousand pages of trial exhibits
(approximately ten large binders).  Despite this number of

exhibits, this Court does not find that 54,000 copies were "necessary" in this case as instead finds that Plaintiff is entitled to recover 50% of its internal copying costs, or $3,445.96.

### 3. *Additional Costs*

Defendants present two additional objections to Plaintiff's costs. Defs.' Mem. in Opp'n 41. First, they request that the Court reduce the claimed amount of $1,259.00 in fees to serve the complaint and to serve subpoenas on seven non-parties to exclude the "rush" fees. Defs.' Mem. in Opp'n 41. They note that neither the invoices that Plaintiff provides, nor Plaintiff's Petition, state the amount of the rush surcharge or why it was necessary. Defendants therefore request that the Court require Plaintiff to amend its petition to request only the non-rush fees for service. Defs.' Mem. in Opp'n 41. In light of Plaintiff's failure to adequately demonstrate the necessity or reasonableness of these fees, the Court will reduce the claimed amount by half and award $629.50.

### 4. *Table VII: $2,480.73 in H & H Costs*

Defendants object to the costs presented in Table VII on the same basis that they objected to the previous categories of H&H fees. Defs.' Mem. in Opp'n 23. Plaintiff does not separate the H&H costs in the same manner that it separated the H&H attorney's fees. It is therefore impossible for the Court to

specifically determine which costs were incurred in relation to the activities set forth in Tables IV, V, and VI.  Based on the analyses in section III.A. above, the Court finds that Plaintiff is entitled to reasonable H&H costs relating to the litigation consulting.  It is not entitled, however, to costs relating to the PTO objections and corporate reinstatement.  Because it appears that at least some of the listed costs relate to the PTO objections and corporate reinstatement, *see* Pl.'s Am. Mot. 20, and these issues constituted a substantial part of the hours expended by Hogan & Hartson as provided in the Petition (see Pl.'s Am. Mot. 19-20) the Court will reduce by 50% the costs petitioned for relating to Hogan & Hartson and award $1,240.37. In total this Court will award $16,885.97 in costs.

## V. Conclusion

For these reasons, the Court will grant in part and deny in part Plaintiff's petition for attorney's fees and costs. An appropriate order will issue.


_____/s/_____
January 13, 2010                     James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE